## STATE OF OREGON, RESPONDENT, *v.* JACKSON GRANT, APPELLANT.

INSTRUCTIONS—MURDER—DEGREE OF GUILT.—A person charged with murder in the first degree may be convicted under such indictment of murder in the second degree, or of manslaughter. On the trial of such case, the degree of guilt, as well as the guilt itself, should be left to the determination of the jury, and not assumed by the court.

APPEAL from Multnomah County.

On the twenty-second day of October, 1878, the appellant was indicted for the crime of murder, and was tried and convicted of murder in the first degree on the sixteenth day of January, 1879. Upon the trial the court, among other, gave to the jury the following instructions:

1. "Two classes of testimony are relied upon by the state in this case, viz.: confessions and circumstances. Evidence of admissions or confessions made by the defendant since his arrest has been offered, and is before you. A confession, without some other proof that a crime has been committed, is not sufficient to warrant a conviction. Confessions are always to be received with caution. The situation of the witness, his surroundings, the excitement under which he may have labored, the conflicting emotions of hope and fear by which he may have been actuated, and the inability of the accused to contradict or explain, are all to be taken under consideration. If, however, the confessions are made freely and voluntarily; if they are made at different times

and to different persons; if they are corroborated by the conduct of the party accused, and by other evidence, they may become the most convincing proofs of the law."

2. "Circumstantial evidence may be quite as satisfactory as direct evidence. In some cases it is more so. As stated by the court in a case referred to by counsel in your hearing, when willful and deliberate murder contemplated before hand has been committed, it rarely occurs that direct positive evidence concerning it exists. When a man lies in wait for another and secretly shoots or stabs him to death, he is careful of every precaution against observation by others. The evidence of his crime must be found in circumstances, and if these circumstances concur and point clearly and satisfactorily to the guilt of the accused, producing that conviction in the mind to the degree required, it is sufficient."

3. "If you should find that it was the habit of the defendant to frequent the vicinity where the killing took place; if he was seen in that immediate vicinity about the time when, according to the testimony, the killing must have been done; if he was in the habit of carrying a weapon capable of inflicting such wounds as caused Spellen's death; if the defendant has made contradictory or false statements in reference to the fact of his having been in Spellen's vicinity about the time of the homicide; such facts are material for your consideration."

4. "There is testimony which shows that Dennis Spellen was found dead near his cabin on Sunday, thirtieth day of last June, and that he had died from the effects of a gunshot wound in the back. The testimony tended to show that he was so shot by some person or persons while he was walking across a log over a ravine about seventy-five feet distant from his cabin, and that the person or persons so shooting did it from ambush, or from a place where he or they had been lying in wait. If this is true, then the killing was done of premeditated and deliberate malice, and is murder in the first degree in the person or persons who did the shooting."

5. "The testimony tended to show that the deceased had

been dead about three days. There was also the testimony of a witness who worked upon the building on the corner of Stark and Front streets where Spellen worked, to the effect that Spellen worked on such building on Tuesday, the twenty-fourth or twenty-fifth day of June. The Tuesday of that week came on the twenty-fifth of June. If, then, Spellen had been dead three days when found on the thirtieth of June, and if he quit work in the city Tuesday night of the twenty-fifth, the killing was probably done between the night of the twenty-fifth and twenty-eighth day of June, or on Wednesday or Thursday, the twenty-sixth or twenty-seventh days of June."

6. "The witness Zegler testifies that he saw Grant at different times near this cabin in the latter part of this month with a gun in his hand; that once he saw him leaning against the corner of the cabin, and that upon seeing witness the defendant turned back. The German, who swore through an interpreter, testified that he saw the defendant on Thursday or Friday before the body was discovered; that he was near the cabin with the woodchopper; did not see him have a gun. He must have seen Grant there with the woodchopper, if he is truthful and reliable, and not mistaken in what he says on the twenty-seventh or twenty-eighth days of June. Who was the woodchopper, and was it Spellen? There is testimony to the effect that Spellen was accustomed to chop wood at intervals for the railroad. You may consider from all the facts and circumstances whether this woodchopper was or was not Spellen, and whether or not Grant, the defendant, was seen on Thursday or Friday of that week with Spellen at or near this cabin, and you are to give to it whatever importance the fact, if it is a fact, of the defendant being at and in the vicinity of this cabin near the time when the killing must have been done, in determining the question of the defendant's guilt or innocence. It may be important for you to consider what the probable fact is, as to whether the person who did the killing had been much about or in the vicinity of Spellen's cabin, and had become acquainted with the location and surroundings and with the habits of the

deceased.    All of these facts and circumstances should be carefully weighed by you as tending to corroborate or contradict the alleged confessions made to Smith and his wife."

7. "In the anxiety which all men should feel to secure the punishment of him who perpetrates an atrocious crime, we should carefully guard against the conviction of an innocent person.    And on the other hand, in the tenderness which men feel for human life, we should not hesitate to pronounce that conviction when the testimony is convincing."

8. "There is no evidence in this case which reduces the crime from murder in the first degree to murder in the second degree, or to manslaughter.    The defendant, if he is guilty at all, is guilty of murder in the first degree."

No exception was taken to that part of the instructions which states that Spellen was found dead near his cabin on the thirtieth day of June, and that he had died from the effects of a gunshot wound in the back.    These facts were admitted before the jury on the trial.    With this exception, each of the foregoing instructions was excepted to.

*J. Quinn Thornton,* for appellant:

The errors insisted upon in the charge of the court to the jury, as clearly erroneous, are the language of the court contained in the first, second, and third instructions taken in the order in which the language was employed.

[The last sentence in each of instructions one and two, and all of instruction three, are quoted and referred to.— Rep.]

The counsel for the appellant submits that the language thus quoted is clearly a hypothetical direction to find the appellant guilty.    And we affirm as a proposition of law as old as the common law, and sustained on both principle and authority, that though the court do not, in so many words, give a positive direction to the jury on the testimony, yet if they do so in strong hypothetical language which embraces all the points of the very case under consideration, a new trial will be granted.    And that such a

27

direction would be to all intents and purposes positive, and have that effect.

In maintaining this proposition, the following authorities are cited: (*Reel* v. *Reel*, 2 Hawks (N. C.), 63; *Hart* v. *Miller*, 3 A. K. Marshall, 33.) These cases are cited in Graham & Waterman on New Trials, vol. 3, pp. 763, 766. Very little attention to the case of *Reel* v. *Reel*, will show that it is exactly like the case contained in the bill of exceptions.

The judge's charge in the North Carolina case, and the charge of the court in the case of the *State* v. *Jackson Grant*, are palpable infringements of the law, which makes the jury the exclusive judges of the facts, and in both cases objectionable on general principles, as in terms dictating the verdict.

But this decision stands not alone. A similar one was made by the court of appeals of Kentucky, in *Hunt* v. *Miller*, 3 A. K. Marshall, 336. In that case too, also the court hypothetically charged the jury. On this subject the court of appeal said: " And it was irregular, because, instead of leaving the jury to weigh the credibility of the witnesses, and determine the facts, without any intimation of opinion from the court on the evidence, the instructions imply an opinion and decision by the court, that both the facts and the law were in favor of Miller's right to recover."

Whether therefore we consider the second, third and fourth exceptions in the light of either principle or authority, the instructions of the court below will be seen to have been erroneous. Nor can the counsel for the state escape from conclusion here reached by suggesting that the court below did not instruct the jury to find a named verdict. No, certainly not. This would have been an open and palpable error. But the jury must not be misled by the court in any manner. Whether therefore they are induced to find a wrong verdict by a positive direction, or by being left to draw an erroneous conclusion from the proof, the consequences being the same, there is the same ground for a new trial. The charge must be not only correct, but so explicit as not to be misconstrued. If from the obscurity, or from the use of expressions that are misunderstood by the jury,

it be misapprehended, so that erroneous inferences are drawn from it, a new trial will be granted. It has been held, that where the charge of the court has even a tendency to make an erroneous impression upon the jury, and to mislead them in their views of the case, a new trial will be granted. (*Benham* v. *Cary*, 11 Wend. 83; *Troxdale* v. *The State*, 9 Humph. 411.)

The fifth and sixth instructions are erroneous because: 1. They are argumentative; and, 2. They invade the province of the jury by carefully analyzing a portion of the testimony, and then charging the jury that "the killing was probably done between the night of the twenty-fifth and twenty-eighth of June, or on Wednesday or Thursday, the twenty-sixth or twenty-seventh days of June."

The authorities cited in another part of this brief, and under another head, show as clearly as precedents can show any doctrine of the law, that it was the duty of the jury, to the exclusion of the court, to say if it could or should be said at all that "the killing was probably done between the nights of the twenty-fifth and twenty-eighth of June, or on Wednesday or Thursday, the twenty-sixth or twenty-seventh days of June."

Without now pausing to present this objectionable feature of the instructions of the court in a stronger light, I observe that the charge is argumentative, will be at once seen by even a casual reading, to say nothing of a critical analysis with a view to eliminating its legitimate meaning. And I will not now detain the court by saying more than that when a charge is argumentative and evasive, this furnishes a ground of reversal, if it is calculated, as this charge certainly was, to mislead the jury. (3 Graham and Waterman on New Trials, 849; *Rhodes* v. *Sherwood*, 9 Ala. 63.)

A judge may not express his opinion on the sufficiency or insufficiency of testimony given in a case to prove a fact. (3 Graham and Waterman on New Trials, 732; *Bowman* v. *Bartlett*, 1 A. K. Marsh. 86.) A question of fact belongs exclusively to the jury. (*Hardaway* v. *Manson*, 2 Munf. 231; *Tyler* v. *Ulmer*, 12 Mass. 163; *Eames* v. *Blackheart*, 12

Ill. 195; *Baldwin* v. *Hayden*, 6 Conn. 453; cited as authorities, 3 Graham and Waterman on New Trials, 731, 737.)

Upon recapitulating the testimony, the court should always instruct the jury that they are the exclusive judges of all questions of fact. (7 Ind. 38; 10 N. Y. 207; and Or. Civ. Code, sec. 198, and many authorities there cited.)

A judgment may be reversed for erroneous instructions, notwithstanding the verdict may appear to be right upon the proof. (*Gaines* v. *Buford*, 1 Dana, 481.) A charge which is clearly erroneous, is not cured by another part which states the laws correctly. (79 Pa. St. 397; *Clem* v. *State*, 31 Ind. 483.)

*J. F. Caples, District Attorney*, and *M. F. Mulkey*, for the state:

It is the province of the judge to instruct the jury as to the tendency of the evidence. The weight of evidence is a matter to be left entirely to the jury. (Hilliard on New Trials, 226, sec. 41.) On questions of fact the judge has a right to advise the jury. (Id. 227, sec. 45.) It is to some extent a matter of discretion with the judge how far he will state the facts in summing up a case. (Id. 227, sec. 46.) Even comments by the judge on the evidence is no ground for a new trial, unless the defendant has been prejudiced thereby. (Id. 228, sec. 47–9; Civ. Code, 151, sec. 227.) If the statement by the judge was not material, and did not effect the merits of the case, it is not error. (Hilliard on New Trials, 230, sec. 52.)

"Whether or not the evidence tends to establish a particular fact is a question of law for the court, while its weight and convincing force are questions for the jury." (41 Barb. 417.)

The court is the judge as to whether there is evidence in a case reducing the crime from murder in the first degree to murder in the second degree or to manslaughter; and if there is no such evidence, the court has a right to tell the jury so. (*State* v. *Garraud*, 5 Or. 216.)

The question as to whether the crime was manslaughter or murder in the second degree was not raised on the trial

at all; no such thing appears from the bill of exceptions, and the judge had a right to charge as he did in the last part of his charge.    (27 Cal. 507.)

Error will not be presumed—it must appear affirmatively upon the face of the record.    (1 Or. 51.)    The judge could assume in his charge that any fact in the case was not disputed, if such was the case, and if a party wishes to dispute this assumption he is bound to say so to the court at the time, and have the matter considered or the fact of the admission settled; and it is not sufficient simply to except so much of the charge without saying more: *Hoxman* v. *Ætna Fire Insurance Co.*, 1 Robertson, 521.)

By the Court, PRIM, J.:

This appeal is based upon exceptions taken at the trial to the charge of the court.    All the material parts of the charge appear to be set out in full in the bill of exceptions; and having examined it carefully, we find no serious objections to any portion thereof, except the last instruction, which is in these words: "There is no evidence in this case which reduces the crime from murder in the first degree to murder in the second degree or to manslaughter.    The defendant, if he is guilty at all, is guilty of murder in the first degree."

This instruction, we think, is erroneous and should not have been given.    The appellant is charged in the indictment with murder in the first degree, and under the indictment might have been convicted of murder in the first degree, murder in the second degree, or manslaughter. Section 160 of the criminal code provides that, "where it appears that the defendant has committed a crime, and there is reasonable ground of doubt in which of two or more degrees he is guilty, he can be convicted of the lowest of those degrees only."    It was the province of the jury to determine the degree of the guilt as well as the guilt itself of the appellant, and this instruction withdrew that question from their consideration.    While the court may state to the jury what the evidence tends to prove, it is their peculiar province to determine upon the weight and

effect of the evidence. (Hilliard on New Trials, 226, sec. 41.)

The facts reported in the bill of exceptions are very meager; they are, that the deceased was found dead in a ravine, near his cabin, with one large hole and twenty-two small ones in his back; that they were gunshot wounds and were the cause of his death. These facts are insufficient to raise a conclusive presumption of murder in the first degree.

To constitute murder in the first degree it is not enough to show that the deceased was killed by some one; but it must be shown that he was killed purposely, and of deliberate and premeditated malice. In this case the malice might be inferred from the use of a deadly weapon if there was anything to show that it was done purposely and with deliberation.

For aught that it appears the deceased may have been killed by some one purely accidentally and without any purpose whatever to injure him or any one else, in which case it would have been murder in either degree. Or it may have been done by some one while engaged in the shooting of wild game, but without "due caution and circumspection," in which case it might have been involuntary manslaughter. In this case we think the court erred in not leaving the degree of guilt to the determination of the jury as well as the guilt itself. The judgment of the court below is reversed and the cause remanded for a new trial.