Argued January 18, affirmed March 29, 1961

## STATE OF OREGON *v.* PACIFIC POWDER COMPANY

360 P. 2d 530

*Avery W. Thompson,* District Attorney, Roseburg, argued the cause and filed briefs for appellant.

*E. K. Murray,* Tacoma, Washington, and *Edwin E. Allen,* Eugene, argued the cause for respondent. On the brief were Murray, Graves & Murray, Tacoma, and Bartle and Allen, Eugene.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

PERRY, J.

An indictment for manslaughter was returned by

the grand jury of Douglas county against the defendant. The charging part of the indictment is as follows:

"The said Pacific Powder Company, a corporation, on the 7th day of August, A.D., 1959, in the said County of Douglas and State of Oregon, then and there being a corporation, and the owner and operator of one certain Ford Truck, loaded by the said defendant with two (2) tons of Dynamite and four and one-half (4½) tons of Nitro-Carbo Nitrate and while in the course of transporting the same from Tenino, Washington to a place in Oregon, did then and there park the said truck on a public street adjacent to a wooden building, to-wit: on Pine Street, inside the corporate limits of Roseburg, Douglas County, a city of 13,000 inhabitants and within one-half (½) block of a principal East-West thoroughfare of said City of Roseburg and did then and there leave the said truck at said time and place unattended, which said act or acts were done without due caution and circumspection, considering the nature of the cargo in the said truck. While the said truck was so parked unattended at said time and place the said wooden building became engulfed in an extremely hot fire. The said acts of the defendant, in leaving the said truck unattended at said time and place in concurrence with the fact that the wooden building became engulfed in an extremely hot fire proximately caused the cargo on the said truck to explode at said time and place with a tremendous blast which said blast threw materials and caused air pressure against the body of one Harrison Carmichael, proximately causing injuries upon the person of the said Harrison Carmichael, a human being, which injuries proximately resulted in the death of Harrison Carmichael, which death ensued within one (1) year, to-wit: on the 7th day of August, 1959, and after the infliction of said injuries, contrary to the Statutes in such cases made and provided, and against the peace and dignity of Oregon."

A demurrer was filed by the defendant which was sustained by the trial court and the State appeals.

The principal ground upon which defendant bases its demurrer is its contention that under the laws of this state a corporation cannot be prosecuted for the crime of involuntary manslaughter.

The people of this state, through their legislature, enacted ORS 163.040① and ORS 163.080② defining the crime of manslaughter and fixing the penalty for violation.

ORS 161.010, insofar as material, reads as follows:

"As used in the statutes relating to crimes and criminal procedure, unless the context requires otherwise:

"* * * * *

"(11) 'Person' includes corporations as well as natural persons. * * *"

The same thought was expressed by the legislature in Deady's Laws 1864, ch 53, p 576, 577:

"Sec. 713. Whenever the terms mentioned in the following sections are employed in this code, they are deemed to be employed in the senses hereafter affixed to them, except when a different sense plainly appears."

---

① ORS 163.040 Manslaughter generally. (1) Any person who, without malice express or implied, without deliberation, and upon a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible, voluntarily kills another, is guilty of manslaughter.

(2) Any person who, in the commission of any unlawful act, or a lawful act without due caution or circumspection, involuntarily kills another, is guilty of manslaughter. The provisions of this subsection shall not apply to the killing of any person where the proximate cause of such killing is an act or omission defined as negligent homicide in ORS 163.091.

(3) Every killing of a human being by the act, procurement or culpable negligence of another, when the killing is not murder in the first or second degree, or is not justifiable or excusable or negligent homicide as provided in ORS 163.091, is manslaughter.

② ORS 163.080 Penalty for manslaughter. Every person convicted of manslaughter shall be punished by imprisonment in the penitentiary for not more than 15 years and by a fine not exceeding $5,000.

"Sec. 724. The word 'person,' includes corporations as well as natural persons; * * *"

While at early common law it was thought that a corporation as a corporate entity could not commit a crime, 1 Blackstone's Commentaries 476, with the growth and development of the use of the corporate entity in the modern business world this view has changed.

In 10 Fletcher Cyc. 647, Corporations, Crimes and Penalties § 4942, it is stated:

"While the criminal law cannot be extended to corporations in the same manner or as fully as to natural persons, it is held today, almost universally, that a corporation may be liable criminally for crimes which its agents are capable of committing on its behalf, * * *"

In the field of criminal responsibility the state jurisdictions, with the exception of New Jersey, have refused to extend corporate responsibility to crimes "involving personal violence and specifically, homicide or manslaughter," 3 Modern Corporation Law 727, ch 66, Torts and Crimes § 1681. *Commonwealth v. Illinois Cent. R. Co.,* (1913) 152 Ky 320, 153 SW 459; *State v. Lehigh Valley R.R. Co.,* (1917) 90 NJL 372, 103 A 685, (1920) 94 NJL 171, 111 A 257; *Commonwealth v. Peoples Nat. Gas Co.,* (1954) 102 Pitt Leg J 348.

However, it is recognized in a leading case upon this subject to be within the legislative power to enact specific legislation which would create corporate criminal responsibility for acts of misfeasance and nonfeasance resulting in homicide. *People v. Rochester Ry. & L. Co.,* 195 NY 102, 88 NE 22.

Therefore, the specific question is: Was there a

legislative intent to include corporations within the criminal field of involuntary manslaughter by use of the phrase, " 'Person' includes corporations as well as natural persons?"

If these words stood alone and unqualified, the state's argument, that corporations are included, would be quite persuasive. But they are qualified by the legislative injunction that the inclusion of corporations the same as the individual person should be used unless "the context requires otherwise."

Involuntary manslaughter lies in legal contemplation within the framework of homicide. This has been clearly pointed out by this court in numerous cases such as *State v. Trent,* 122 Or 444, 454, 252 P 975, 259 P 893, where we said:

"* * * The proposition that involuntary manslaughter is included in an indictment for murder has been passed upon in this jurisdiction a number of times, and our court has uniformly adhered to the common-law doctrine that manslaughter, as defined by the above sections, is a degree of homicide: See State v. Grant, 7 Or. 414; State v. Ellsworth, 30 Or. 145 (47 Pac. 199); State v. Setsor, 61 Or. 90 (119 Pac. 346); State v. Farnam, 82 Or 211 (161 Pac. 417, Ann. Cas. 1918A, 318); State v. Clark, 99 Or. 629 (196 Pac. 360)."

The decisions of the courts of all jurisdictions and this court uniformly disclose that homicide by its very nature lies in the field of inherently human relations, for it includes murder, and has been defined by this court as follows:

"Homicide is the slaying of one human being by the act, procurement or *ommission of another.*" (Italics supplied) *State v. Trent,* supra, 122 Or 444, 453.

No doubt should lie in anyone's mind that the legislature ever considered making corporate entities criminally liable for murder, for the only penalties provided are either death or imprisonment, penalties incapable of execution in the manner prescribed by law. Yet the language of the statute relative to the homicide of murder is framed as follows:

ORS 163.010, "First degree murder. (1) Any person who purposely, and of deliberate and premeditated malice, or in the commission of or attempt to commit rape, arson, robbery or burglary, kills another, is guilty of murder in the first degree."

ORS 163.020, "Second Degree murder. (1) Any person who kills another purposely and maliciously but without deliberation and premediation, or in the commission or attempt to commit any felony other than rape, arson, robbery or burglary, is guilty of murder in the second degree."

From what has already been stated, it seems certain that the word "person" as used in the degrees of murder, and lying within the definition of homicide, means a human being.

Aside from what we have heretofore stated, the intent of the legislature is to be found in the penalty prescribed for the crime of involuntary manslaughter.

ORS 163.080, "Penalty for manslaughter. Every person convicted of manslaughter shall be punished by imprisonment in the penitentiary for not more than 15 years and by a fine not exceeding $5,000."

It, therefore, seems to us quite clear that the legislature in enacting into law the common-law definition of homicide, although dividing it into degrees of murder and manslaughter, was considering only human derelictions from required normal behavior. The word "person" in the involuntary manslaughter stat-

ute, in our opinion, when considered in context, cannot, therefore, be construed to include corporations.

Although the demurrer raises other questions relative to the sufficiency of the indictment, since a corporation cannot be indicted for involuntary manslaughter, it would be a useless gesture on our part to consider them.

The judgment of the trial court is affirmed.