[No. F002297. Fifth Dist. Dec. 1, 1983.]

GRANITE CONSTRUCTION CO., Petitioner, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**466**

**COUNSEL**

Cooper, White & Cooper, Mark L. Tuft, Jed E. Solomon, McInerney & Dillon and Robert L. Leslie for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, David de Alba and Clayton S. Tanaka, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**WOOLPERT, J.—** In this petition, we are asked to exempt corporations from prosecution for manslaughter. We refuse, holding that corporations may be prosecuted for manslaughter under existing California law.

Petitioner, a corporation, is building a power plant known as the "Helms Pumped Storage Project." On January 23, 1981, seven construction workers were killed in an accident at that project. After evidence regarding this accident was presented to the Fresno County Grand Jury, petitioner was indicted for manslaughter.

The issue is whether the California Penal Code exempts corporations from prosecution for manslaughter under Penal Code section 192. This is a question of legislative intent. (1 Witkin, Cal. Crimes (1963) § 11, p. 13.)

The Penal Code applies to corporations. The code defines "person" to include a corporation as well as a natural person. (Pen. Code, § 7.) The Penal Code's sections on persons liable for crime, using unqualified language, make corporations proper defendants in any criminal case. Under section 26, any person is capable of committing crimes except children, idiots and those lacking mens rea through mistake of fact, et cetera. Under section 27, any person who commits a crime is liable for punishment. Thus the California Penal Code applies to corporations, and if they commit crimes, they are liable for punishment.

California courts have recognized that corporations are proper criminal defendants. As early as 1907 a California court held that " 'Private corporations in respect to their liability for the acts of their agents or servants stand before the law on the same footing as individuals.' [Citation.]" (*People* v. *Palermo Land & Water Co.* (1907) 4 Cal.App. 717, 721 [89 P. 723, 725] (hg. den. Mar. 28, 1907, as reported in 4 Cal.App. at p. 722); see generally, 17 Cal.Jur.3d, Criminal Law, § 39, and cases cited therein.)

Petitioner claims surprise at the prosecution of a corporation for manslaughter, asserting that the indictment was "totally unforeseeable," and that a corporation may be charged with crimes against "property," but "not against the person." This attempt to distinguish crimes against property from crimes against the person relies on the corporation's nature as an economically motivated entity. While a corporation may directly benefit from a crime against property, crimes against persons are not as directly linked to the profit motive. This argument is unsuccessful. It overlooks the substantial *indirect* economic benefits that may accrue to the corporation through crimes against the person. To get these economic benefits, corporate management may shortcut expensive safety precautions, respond forcibly to strikes, or engage in criminal anticompetitive behavior. If any such risk-taking is a corporate action, the corporation becomes a proper criminal defendant.

Manslaughter is defined in Penal Code section 192: "Manslaughter is the unlawful killing of a human being, without malice. It is of three kinds:

"1. Voluntary—upon a sudden quarrel or heat of passion.

"2. Involuntary—in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection . . . ."

This statute does not rule out the prosecution of corporations. Unlike other states' definitions, it does not limit itself to natural persons by defining the act of manslaughter as the killing "of a human being . . . by another."

Petitioner has argued that the absence of the word "person" in section 192 indicates that this statute was not intended to reach corporations. This argument is not convincing. Section 192 defines a crime. It does not define its own scope of application; this is unnecessary in light of sections 7 and 26. (*Ante,* at p. 467.) Though many sections of the Penal Code are in the form "any person who does X is guilty of Y," this would be an irrational statutory basis for distinction between crimes that can be committed by corporations from crimes that can be committed only by natural persons. If so, mayhem, kidnaping and assaults with intent to do great bodily harm could be committed by corporations, but murder and manslaughter could not. (Pen. Code, §§ 187, 192, 203, 207, 220.) These results show that the use of "any person who" language does not provide a distinguishing factor that bars prosecution of corporations for manslaughter. When interpreting statutes, we prefer constructions that do not lead to absurd consequences. (See *In re Eric J.* (1979) 25 Cal.3d 522, 537 [159 Cal.Rptr. 317, 601 P.2d 549]; *Clements* v. *T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 233 [273 P.2d 5]; see also Pen. Code, § 4.)

Petitioner's underlying assumption is that the Legislature did not consider making corporations responsible for crimes against persons when it enacted the Penal Code. Although the code's language expresses no such exception, we are asked to rewrite apparently clear language to conform to the unexpressed assumptions of the 1872 legislators. Because we find no contrary expression in the statute or in the California code commissioners' notes accompanying the 1872 codes, we find it more appropriate to follow the apparently clear language of these statutes. Although courts have assumed in dicta that there is some category of crime that "cannot" be committed by corporations (see, e.g., *United States* v. *John Kelso Co.* (1898) 86 F. 304), there is no provision in the Penal Code that makes this distinction. Under Penal Code section 31, principals chargeable with an offense need not directly commit the act constituting the offense. Traditional notions of fair play and substantial justice are not offended by applying the clear meaning of statutory terms, even when there is mistaken dictum to the contrary. (*People* v. *Sobiek* (1973) 30 Cal.App.3d 458, 474-476 [106

Cal.Rptr. 519, 82 A.L.R.3d 804], cert. den. 414 U.S. 855 [38 L.Ed.2d 104, 94 S.Ct. 155].)

Where a statute's language is clear, its plain meaning should be followed. (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].) In that case the court refused to alter the Public Resource Code's definition of "person" in various contexts. The court commented: "We deem the fact the Act itself defines 'person' to be of importance. 'When a statute prescribes the meaning to be given to particular terms used by it, that meaning is generally binding on the courts.' [Citation.]" (*Id.*, at p. 156.)

■ Legislative history that might support conflicting inferences does not justify departing from clear legislative language, unless it would inevitably result in "absurd consequences" or frustrate the "manifest purposes" of the legislation as a whole. (*People* v. *Boyd* (1979) 24 Cal.3d 285, 294 [155 Cal.Rptr. 367, 594 P.2d 484].) ■ Denying this petition will not result in absurd consequences or disrupt the Penal Code. We have searched for legislative or policy reasons which would exclude corporations from prosecution for manslaughter. None have been found, and none have been presented by petitioner.

California Penal Code section 193 prescribes imprisonment as the ordinary punishment for manslaughter, but does not impose a fine. Petitioner argues that absence of an appropriate punishment for corporations at this juncture indicates that section 192 does not reach corporate defendants.

Section 672 provides appropriate punishment for corporate crimes.[1] (*People* v. *Charter Thrift & Loan* (1973) 30 Cal.App.3d 412, 414 [106 Cal.Rptr. 364, 80 A.L.R.3d 1217]; cf. *United States* v. *Union Supply Co.* (1909) 215 U.S. 50 [54 L.Ed. 87, 30 S.Ct. 15].) This catchall fine section was enacted in 1872 along with the rest of the Penal Code and California's other general codes. These codes are to be construed as parts of the same statute. (Civ. Code, § 23.2.) ■ When construing a statute with several provisions,

---

[1]Penal Code section 672: "Upon a conviction for any crime punishable by imprisonment in any jail or prison, in relation to which no fine is herein prescribed, the court may impose a fine on the offender not exceeding five hundred dollars ($500) in cases of misdemeanors or five thousand dollars ($5,000) in cases of felonies, in addition to the imprisonment prescribed."

constructions that give effect to all are preferred. (Code Civ. Proc., § 1858.)[2]

██ Petitioner contends that this prosecution violates due process principles by unforeseeably enlarging Penal Code section 192. To the contrary, the present issue is whether section 192 applies to corporations. If it does, even if this is the first time it is actually used, there is no "enlargement" involved, and no peril to petitioner's due process rights. (*People v. Sobiek, supra,* 30 Cal.App.3d 458, 474-476.) This case has been compared to *Keeler v. Superior Court* (1970) 2 Cal.3d 619 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]. The comparison does not hold up on examination. *Keeler* involved a situation where the *language* of the statute was being expanded. Penal Code section 187 referred, at that time, to the killing of a "human being." At common law, "human being" did not include a fetus, and the code commissioners' notes attached to Penal Code section 187 indicated that this tradition was to be preserved. (See *Keeler, supra,* at p. 630.)

The code commissioners' notes on Penal Code sections 7, 26 and 192 are silent on the issue before this court. There is no announced intention to preserve some common law limiting doctrine. Moreover, the code language is unambiguous. It does not use "human being," or refer to "another" human being when referring to proper defendants. Because Penal Code section 7 defines "person" to include corporations, and requires that such defined terms "*must*" be used as defined, *Keeler* is distinguishable and does not support petitioner's argument. (See *People v. Sobiek, supra,* 30 Cal.App.3d 458.)

---

[2]Courts in other states have also imposed fines on corporations where both fines and imprisonment would be imposed on natural persons. (See generally, Annot., Corporation's Liability to Criminal Prosecution As Affected By Punishment or Penalty Imposed (1977) 80 A.L.R.3d 1220, and cases cited therein.)

The academic literature has discussed the adequacy of fines as the penalty for corporate misconduct in several articles and notes. (See, e.g., Radin, *Corporate Criminal Liability for Employee-endangering Activities* (1983) 18 Colum. J. of L. and Soc. Prob. 39-75; *Developments in the Law, Corporate Crime: Regulating Corporate Behavior Through Criminal Sanction* (1979) 92 Harv.L.Rev. 1227, 1251-1257; Geis, *Criminal Penalties for Corporate Criminals* (1972) 8 Crim. L.Bull. 377; Note, *Corporate Homicide: The Stark Realities of Artificial Beings and Legal Fictions* (1981) 8 Pepperdine L.Rev. 367, 409-417.) The inadequacy of the penalty provided by section 672 is a legislative problem irrelevant to this case. The existence of a penalty applicable to corporations makes this prosecution more than "waste motion." Regardless of the penalty, the corporation has reason to defend itself against the charge, because of damage to its reputation, the standing of management in the eyes of its stockholders, and the like.

This is a case of first impression in California.[3] Petitioner insists that some "specific" legislation would be needed to make Penal Code section 192 applicable to corporations. This is not required in California. In some states, courts have held that corporations could not be charged with manslaughter. In each, however, there is no statutory analogy to the California Penal Code. In other cases indictments of corporations for manslaughter have been upheld without a codified theory of corporate liability.

Some cases are distinguishable because of their statutory contexts. *State v. Pacific Powder Co.* (1961) 226 Ore. 502 [360 P.2d 530, 83 A.L.R.2d 1111] involved prosecution of a corporation after a truck was left unattended; the truck exploded and a passerby was killed. The *Pacific Powder* court was examining Oregon Revised Statute section 163.040, which stated: "Any person who . . . involuntarily kills another . . . is guilty of manslaughter," and defined manslaughter as the killing of a human being by the act, procurement or culpable negligence of another. In this statutory context, the court found that the "persons" subject to prosecution for manslaughter were limited to human beings. The statute's references to "another," after referring to a "human being" provided a context[4] where the Oregon statute's general definition of "persons" was inapplicable. (*Pacific Powder, supra,* at p. 531.)[5] This analysis is not applicable to California Penal Code section 192. Our statute defines the crime of manslaughter without referring to "another" human being.

The most recent case is *Vaughan & Sons, Inc. v. State* (Tex. Crim. 1983) 649 S.W.2d 677. This case exempts corporations from prosecution for manslaughter because Texas Penal Code Ann. section 7.22(a) (Vernon 1974) uses the pronoun "he" to refer to offenders, and it accepts the argument that "soulless" corporations cannot formulate intent or, among other things,

---

[3]Only about a dozen such cases could be found in the United States. Canadian law has gone through a similar evolution. (See Leigh, *The Criminal Liability of Corporations in Other Groups* (1977) 9 Ottawa L.Rev., 247. There are also cases where a corporation has been prosecuted for manslaughter, but this issue was not raised or was not determinative on appeal. For example, *People v. Warner Lambert Co.* (1980) 51 N.Y.2d 295 [434 N.Y.S. 159] (employer, a corporation, prosecuted for manslaughter after an explosion killed six of its employees; indictment was quashed for lack of sufficient evidence). The "Pinto" case, where a corporation was acquitted. (State v. Ford Motor Co. (1978) No. 5324, Ind. Super. Ct., filed Sept. 13, 1978, and discussed in Note, *Corporate Homicide: Stark Realities of Artificial Beings and Legal Fictions, supra,* 8 Pepperdine L.Rev. 367.)

[4]Oregon has revised its criminal law since *Pacific Powder* was decided, eliminating this formulation.

[5]Even this argument (that statutes referring to "another" require only human defendants) has been attacked or ignored in other cases. (See, e.g., *People v. Ebasco Services, Inc.* (1974) 77 Misc.2d 784 [354 N.Y.S.2d 807].) Even if the killing must be by "another person," a corporation might be responsible for that person's act. (Pen. Code, § 31.) An analogy is the textbook case of a woman charged with common law rape when another person does the actual penetration.

smoke tobacco. (*Vaughn & Sons, supra,* at p. 678.) These arguments do not apply to the California Penal Code. Penal Code section 7 states that words used in the masculine include the neuter. Even so, Penal Code section 192 does not contain such pronouns, and California law does impute intent to corporations.

Although corporations in Texas may not be capable of forming "intent" or possess a "condition of the mind," California corporations can form intent, be reckless and commit acts through their agents. The criminal intent problem has not been squarely addressed, but corporations have been prosecuted for crimes of specific intent under the California Penal Code. (*W. T. Grant Co.* v. *Superior Court* (1972) 23 Cal.App.3d 284 [100 Cal.Rptr. 179] (corporation liable for grand theft); *People* v. *California Protective Corp.* (1926) 76 Cal.App. 354, 363 [244 P. 1089] (corporation could "willfully" practice law and become liable for a fine for illegal practice of law); *People* v. *Palermo Land & Water Co., supra,* 4 Cal.App. 717 (misdemeanor prosecution for refusing to sell water for irrigation).[6] The claim that corporations are not chargeable with specific intent crimes does not appear to have been raised in later cases. For example, in *People* v. *Charter Thrift & Loan, supra,* 30 Cal.App.3d 412, a prosecution for grand theft, the appellate issue was proper punishment, not whether a corporation could be prosecuted or have intent.

California has well established methods to impute criminal responsibility to corporations, so a codification of rules for imputing intent, criminal negligence or recklessness is unnecessary. This is unlike the situation in other states. We are not convinced that the lengthy effort to adopt the Model Penal Code in California failed because it included language which would have been more specific on this issue. If corporations are liable for crimes of specific intent, then they should be equally liable for crimes of criminal negligence or recklessness.

The Pennsylvania court in *Commonwealth* v. *McIlwain School Bus Lines* (1980) 283 Pa.Super. 1 [423 A.2d 413] avoided its earlier problems with "intent" by applying a new codification of the principles of corporate liability.[7] This legislation clarified the Pennsylvania criminal code, making corporations liable for crimes of intent. Changes in New York statutes were

---

[6]But see Comment, *Criminal Law, Liability of the Corporation for Manslaughter* (1927-1928) 16 Cal.L.Rev. 329 (arguing that a corporation should not be liable for crimes involving mens rea unless an individual employer would be liable in the same circumstances).

[7]The first case in this country to reach this issue was *Commonwealth* v. *Punxsutawney Street Passenger Railway* (1900) 24 Pa.C.C. 25 (48 Pitt.Leg.J. 42). This court could not accept the idea that corporations could have malice or intent.

essential to the ruling in *People* v. *Ebasco Services, Inc.*, *supra,* 77 Misc.2d 784 [354 N.Y.S.2d 807], which overruled *People* v. *Rochester Railway and Light Co.* (1909) 195 N.Y. 102 [88 N.E. 22]. New York enacted a new corporate responsibility provision in its criminal codes in the interim between these cases. But *Ebasco* does not rely on any feature of the new statute that is not in California's existing Penal Code. The statute construed in *Ebasco* is less explicit than the California Penal Code. New York's Penal Law uses "killing by another" language and relies on a weak definitional statute. Where Penal Code section 7 simply states that "person" includes corporations, New York's Penal Law says that "'person' means a human being, and *where appropriate,* a public or private corporation . . . ." (*Ebasco, supra,* 354 N.Y.S.2d at p. 811, citing N. Y. Penal Law, § 10.00(7), italics added.) New York's "appropriateness" language could easily have been used to prevent prosecution of corporations, particularly in light of the "killing by another" language in New York's manslaughter definition. (*Ebasco, supra,* 354 N.Y.S.2d at p. 810, citing N. Y. Penal Law, § 125.10. Cf. *State* v. *Pacific Powder Co.*, *supra,* 226 Ore. 502 [360 P.2d 530].)

A similar pattern is found in *Commonwealth* v. *Fortner L.P. Gas Co.* (Ky.App. 1980) 610 S.W.2d 941, which overruled a 1913 case that disallowed prosecution of a corporation for manslaughter. (*Commonwealth* v. *Illinois Central Railroad Co.* (1913) 152 Ky. 320 [153 S.W. 459].) Petitioner attributes the change to passage of Kentucky Revised Statute section 502.050, a codification of rules for corporate criminal liability. But the primary statutory change relied on by the *Fortner* court was the change in the Kentucky Penal Code's definitional article. This article defines "person" to include corporations "when appropriate"—like the definition used by the *Ebasco* court, a much weaker definition than already found in California Penal Code section 7.

Petitioner argues that the district attorney failed to seek an appropriate remedy against it, citing Labor Code section 6425.[8] We note that this sec-

---

[8]Labor Code section 6425: "Any employer, and every employee having direction, management, control, or custody of any employment, place of employment, or other employee, who willfully violates any occupational safety or health standard, order, or special order, or Section 25910 of the Health and Safety Code, and that violation caused death to any employee, or caused permanent or prolonged impairment of the body of any employee, shall, upon conviction, be punished by a fine of not more than ten thousand dollars ($10,000), or by imprisonment for not more than six months, or by both; except that if the conviction is for a violation committed after a first conviction of such person, punishment shall be by a fine of not more than twenty thousand dollars ($20,000) or by imprisonment for not more than one year, or by both. Nothing in this section shall prohibit a prosecution under Section 192 of the Penal Code, rather than under this section, for the death of an employee. However, no person may be prosecuted under both this section and Section 192 of the Penal Code for the same act or omission."

tion involves the "human" quality of wilfulness, and expressly preserves a prosecutor's discretion to use Penal Code section 192 against employers.

Petitioner admits that Labor Code section 6425 applies to corporations, the word "employer" obviously including corporate employers. Although the section appears to have "only" misdemeanor significance, and allows for greater fines than here sought, nothing in the section implies a legislative intention to disallow other means of bringing corporations to the bar for homicide.

Furthermore, we must assume that when the Legislature used "person" in the last sentence of Labor Code section 6425, it knew the Penal Code definition included corporations. As a result, the *preceding* sentence: "Nothing in this section shall prohibit a prosecution [of an employer] under Section 192 of the Penal Code, *rather than under this section,* for the death of an employee," is evidence that prosecution of corporations for manslaughter was contemplated.

We remain unconvinced by petitioner's "due process" arguments. Petitioner admits that its actions were controlled by Labor Code section 6425. We doubt that petitioner's failure to recognize that Penal Code section 192 also applied to its actions made any difference to its actions.

The alternative writ is dissolved. The peremptory writ is denied.

Zenovich, Acting P. J., and Hamlin, J., concurred.

A petition for a rehearing was denied December 28, 1983, and petitioner's application for a hearing by the Supreme Court was denied January 26, 1984. Broussard, J., was of the opinion that the application should be granted.