Opinion
HOLLENHORST, J.
Pursuant to California Rules of Court, rule 62 et seq., we accepted a transfer of this case from the Appellate Department of the Riverside Superior Court. In this appeal, we are asked for the first time to decide whether the surreptitious videotaping of sexual activity violates California’s privacy statutes, Penal Code sections 630 and 632. The trial court overruled defendant’s demurrer and a jury convicted defendant. Defendant appeals arguing the conduct in question is not prohibited by these sections. We agree with the trial court’s determination and affirm.
Facts
On three different occasions, defendant invited young women to his residence. In the bedroom, with the door closed and window curtains drawn, defendant and the three women engaged in sexual activity including sexual intercourse. Without obtaining the consent of the women, defendant videotaped these encounters utilizing a video camera which he had hidden in the closet. The women were never advised of the existence of the camera until being subsequently informed by police who recovered the videotapes.
*1207 Discussion
1. Videotaping May Violate the Right of Privacy.
Penal Code sections 630 and 632 define the purpose of the privacy act and its proscriptions.[1] Neither side has provided controlling authority deal *1208 ing directly with videotaping; however, as we discuss, the language of the statute and cases makes it clear that the Legislature intended to control the activity underlying this case.
The purpose of the statutes is clear and unambiguous. Initially, in Penal Code section 630, the Legislature recognized that technology had advanced to the extent that privacy could be imperiled unless the Legislature intervened. The privacy statutes were enacted after a series of hodgepodge regulations dealing with privacy in communications had been amended and reamended. It was out of recognition that the entire privacy area needed overhaul that the privacy statutes were adopted. (Van Boven, Electronic Surveillance in California: A Study in State Legislative Control (1969) 57 Cal.L.Rev. 1182, 1189-1190.) We note in the text of section 630, no reference is made to a specific device or instrument for eavesdropping. Rather, the prohibition is based on the purpose for which the device or instrument is used. In Penal Code section 632, the statute provides against the use of “any electronic amplifying or recording device” for the purpose of eavesdropping or recording private communications. We find that a video recorder is an instrument which, if used in the manner proscribed under section 632, is a recording device for purposes of the privacy act. “If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.” (People v. Knowles (1950) 35 Cal.2d 175, 183 [217 P.2d 1].) “The dominant objective of the act, as reflected in its preamble, is ‘to protect the right of privacy of the people of this state.’ ” (Warden v. Kahn (1979) 99 Cal.App.3d 805, 810 [160 Cal.Rptr. 471].)
Defendant contends that even if a video recorder is a device or instrument covered by the privacy act, the statute only prohibits the surreptitious recording of oral communications, i.e., conversations, and does not extend to the recording of sexual acts or other forms of communication. We disagree. While communication and conversation are similar in their meaning, conversation refers to a spoken exchange of thoughts, opinions, and feelings while communication refers more broadly to the exchange of thoughts, messages or information by any means. (The American Heritage Dict. (2d College ed. 1976) pp. 299, 320.) Additionally, we note that in the federal wiretapping provisions, Congress expressly limited the application of its statute to the nonconsensual recording of oral communications. (18 U.S.C. § 2510(2).) No such similar express limitation is found in the privacy act.
*1209 In other contexts, communication has been recognized to include not only oral or written communication but communication by conduct as well. For example, in the area of attorney-client privilege, it has been recognized that “[t]he privilege embraces not only oral or written statements but actions, signs, or other means of communicating information by a client to his attorney. [Citations.] ‘[A]lmost any act, done by the client in the sight of the attorney and during the consultation, may conceivably be done by the client as the subject of a communication, and the only question will be whether, in the circumstances of the case, it was intended to be done as such.’ ” (City and County of S. F. v. Superior Court (1951) 37 Cal.2d 227, 235-236 [231 P.2d 26, 25 A.L.R.2d 1418].) That sexual relations is a form of communication, be it communication of love, simple affection, or, simply of oneself, cannot be readily disputed.[2]
We acknowledge that certain terms used in the privacy act, such as “eavesdropping,” “amplifying device” and “telephone,” might suggest a narrow definition of communication, synonymous with conversation. However, Penal Code section 630 expressly states the intent of the Legislature to protect the right of privacy of the people of this state. Consistent with the express declaration of intent and in the absence of any express statutory limitations, we find that “communication” as used in the privacy act is not limited to conversations or oral communications but rather encompasses any communication, regardless of its form, where any party to the communication desires it to be confined to the parties thereto. If the act covers eavesdropping on or recording of a telephone call, it surely covers the nonconsensual recording of the most intimate and private form of communication between two people.
2. Due Process.
Having determined that the privacy statute proscribes the nonconsensual recording of any confidential communication, regardless of the content of the communication or its form, we must next determine whether this determination and its application to defendant violates due process. (Bouie *1210 v. City of Columbia (1964) 378 U.S. 347 [12 L.Ed.2d 894, 84 S.Ct. 1697].) The due process clause of the Fourteenth Amendment of the United States Constitution includes the concept that statutes must be written with sufficient definiteness and certainty so as to provide fair notice or fair warning of what conduct is either required or proscribed by the statute. (People v. Superior Court (Engert) (1982) 31 Cal.3d 797, 801 [183 Cal.Rptr. 800, 647 P.2d 76].) Similarly, “[t]here can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language.” (Bouie v. City of Columbia, supra, 378 U.S. at p. 352 [12 L.Ed.2d at p. 899].)
The concept of fair notice is not intended “ ‘to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.’ (Colten v. Kentucky (1972) 407 U.S. 104, 110 . . . .)” (People v. Superior Court (Hartway) (1977) 19 Cal.3d 338, 347 [138 Cal.Rptr. 66, 562 P.2d 1315].) In the case of judicial construction, due process is not violated merely because the language of the statute is being applied to a particular situation for the first time. Thus, in Granite Construction Co. v. Superior Court (1983) 149 Cal.App.3d 465, 470 [197 Cal.Rptr. 3, 45 A.L.R.4th 1011], the fact that a corporation previously had never been prosecuted for manslaughter did not result in a lack of due process. Nor do due process concerns of fair warning arise where the language of the statute is not being expanded in an unforeseeable manner even though the case is one of first impression and even if dicta in prior decisions suggested a narrower application. Thus in People v. Sobiek (1973) 30 Cal.App.3d 458, 473-475 [106 Cal.Rptr. 519, 82 A.L.R.3d 804], the court found no due process violation in applying the grand theft statute to a partner for the wrongful taking of partnership property even though dicta in prior decisions suggested otherwise.
“ ‘This is not a case where an act clearly not criminal at the time of its occurrence, is so declared to be at some subsequent time. Nor is it a case where criminal responsibility should not attach because the actor could not reasonably understand that his contemplated conduct was proscribed.’ . . . ‘It is not always true that where the definition of a crime is extended by judicial construction, a conviction which results therefrom is a denial of due process’ .... ‘[T]he law is full of instances where a man’s fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death. . . . “The criterion in such cases is to examine whether common social duty would, *1211 under the circumstances, have suggested a more circumspect conduct.” ’ ” (People v. Sobiek, supra, 30 Cal.App.3d at pp. 474-475.)
Whether our action today in applying the privacy act to defendant’s conduct is viewed as an enlargement of the statutory language or merely an application of first impression, we are convinced defendant received fair warning. There can be little doubt defendant knew that in recording the sexual activity without the woman’s consent, he was violating her right of privacy and that “common social duty” would suggest a “more circumspect conduct.” Additionally, this is not a case of punishing conduct which clearly was not criminal previously or a situation of expanding the language of the statute in an unforeseeable or unreasonable fashion. Rather, as noted previously, the interpretation is consistent with the Legislature’s intent to protect individual privacy. Accordingly, we find the statute on its face and as interpreted gave fair warning to the defendant that his conduct was proscribed.
Disposition
Judgment is affirmed.
Dabney, J., concurred.

 Penal Code section 630 provides: “The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.
“The Legislature by this chapter intends to protect the right of privacy of the people of this state.
“The Legislature recognizes that law enforcement agencies have a legitimate need to employ modem listening devices and techniques in the investigation of criminal conduct and the apprehension of lawbreakers. Therefore, it is not the intent of the Legislature to place greater restraints on the use of listening devices and techniques by law enforcement agencies than existed prior to the effective date of this chapter.”
Penal Code section 632 provides:
“(a) Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on among such parties in the presence of one another or by means of a telegraph, telephone or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or imprisonment in the county jail not exceeding one year or in the state prison, or by both that fine and imprisonment. If the person has previously been convicted of a violation of this section or Section 631, 632.5, or 636, the person shall be punished by a fine not exceeding ten thousand dollars ($10,000), by imprisonment in the county jail not exceeding one year or in the state prison, or by both that fine and imprisonment.
“(b) The term ‘person’ includes an individual, business association, partnership, corporation, or other legal entity, and an individual acting or purporting to act for or on behalf of any government or subdivision thereof, whether federal, state, or local, but excludes an individual known by all parties to a confidential communication to be overhearing or recording the communication.
“(c) The term ‘confidential communication’ includes any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.
“(d) Except as proof in an action or prosecution for violation of this section, no evidence obtained as a result of eavesdropping upon or recording a confidential communication in violation of this section shall be admissible in any judicial, administrative, legislative, or other proceeding.
“(e) This section shall not apply (1) to any public utility engaged in the business of providing communications services and facilities, or to the officers, employees or agents thereof, where the acts otherwise prohibited by this section are for the purpose of construction, maintenance, conduct or operation of the services and facilities of the public utility, or (2) to the use of any instrument, equipment, facility, or service furnished and used pursuant to the tariffs of such a public utility, or (3) to any telephonic communication system used for communication exclusively within a state, county, city and county, or city correctional facility.
*1208 “(f) This section does not apply to the use of hearing aids and similar devices, by persons afflicted with impaired hearing, for the purpose of overcoming the impairment to permit the hearing of sounds ordinarily audible to the human ear.”

 The dissent contends that, unlike other conduct such as flag burning, sexual conduct is not communication because the message being conveyed by sexual conduct is often difficult to decipher or understand. Implicit in this contention is the concession that communication is not limited to conversations and that at least some conduct is included in its definition. The suggestion, however, that “communication” should be limited to only those communications which are understood, be they words or conduct, is not only a strained construction of the word but one without support as well. The statute is not limited to effective communication and we cannot believe the Legislature would intend such a restriction. Just as the dissent recognizes that words can often be used to conceal rather than convey information, it can be said that people “hear” what they want to “hear.” To attempt to define communication by whether the message conveyed is accurately received would lead to absurd results.