CAMPBELL, P. J.
I disagree with the majority’s strained construction of Penal Code section 632,[1] and therefore dissent.[2]
*1212 Construing a penal statute so that it fails to give an ordinary person fair notice of the act or acts punished violates due process. (People v. Keeler (1970) 2 Cal.3d 619, 633-639 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420] [“human being” in § 187 does not give fair warning that killing a fetus is murder].) Fair notice that a particular act violates a statute is deemed to have been given to a particular defendant by the words of the statute, the legislative intent, or cases construing the statute. (See id. at pp. 635 [“section 187 bears a plain, common sense meaning, well settled in the common law and fortified by its legislative history”], 636-639 [discussing case law].) A construction which does not comport with statutory language, legislative intent, or case law also violates the foundational constitutional principle of the separation of powers, except when the construing court overrules a previous judicial construction. (See, id. at pp. 624-633 [discussing language, legislative intent and case law and concluding that to construe § 187 to include feticide violates separation of powers]; Marks v. United States (1977) 430 U.S. 188, 194-197 [51 L.Ed.2d 260, 267-268, 97 S.Ct. 990] [finding latest Supreme Court definition of obscenity impliedly reasonable but finding a judicial enlargement precluding fair notice].) The exception is not applicable here because there is no previous judicial construction of section 632 as to the meaning of “communication”; therefore, in this case if the majority’s construction of that term is not supported by any of the three elements of statutory construction, both due process and the separation of powers have been violated by an act of judicial legislation. Neither language, nor legislative intent, nor case law supports the majority’s construction of that key term.
*1213 The statutory language gives a defendant fair notice that the defendant’s acts violated a statute as long as the language is construed “ ‘according to the fair import of [its] terms’ ” not going “so far as to create an offense . . . by giving the terms used . . . unusual meanings.” (People v. Keeler, supra, 2 Cal. 3d at p. 632.) “Penal statutes will not be made to reach beyond their plain intent; they include only those offenses coming clearly within the import of their language.” (Ibid.)
The majority holds that sexual conduct is a form of communication in the sense that it conveys the thoughts and emotions of the participants. This strained construction of “communication” attributes to that term the “unusual meaning[]” of sexual conduct, a meaning which does not come “clearly within the import” of communication. Sexual acts are not the communication of thoughts and feelings; rather, they are evidence of feelings in the same way that a deadly assault is evidence, not communication, of malice.
To be distinguished from complex acts with multiple purposes in addition to communication, such as sexual conduct, are simple gestures and symbolic acts which have culturally determined meanings. Such acts as an affirmative nod and burning the flag are solely communicative in purpose in exactly the same sense as words or semaphore. The actor and observer are not so intent on the performance of these acts as on their meaning. The same cannot be said of more complex activities such as sexual conduct where multifarious purposes other than communication may be present exclusively, or concurrently and in varying degree, in any one instance, such as pleasure, procreation, and the satisfaction of a host of psychological, spiritual, and emotional needs and desires.
Thus, when one thinks of communication, one does not ordinarily or usually think of sexual conduct because sex has so many other meanings and communication has more obvious and concrete associations all associated with words, gestures, and symbols. Sexual conduct is not exclusively, nor even primarily or usually, communication in the sense that words, gestures, and symbolic acts are exclusively communication; therefore, the plain and ordinary meaning of communication cannot include sexual conduct, and the majority’s construction to that effect is strained and assigns an “unusual” meaning to communication not “clearly within the import” of that term. Although recording sexual conduct might be considered “within the reason or mischief’ and “of equal atrocity, or of kindred character” with the recording of a confidential communication, that is not sufficient to construe communication to include sexual acts. It is not the function of this court “to fill an asserted ‘gap’ in the law” by punishing the recording of *1214 private sexual conduct when the Legislature has not clearly done so. (People v. Keeler, supra, 2 Cal.3d at pp. 632-633.)
In making this distinction between sex and communication, I recognize the unavoidable overlap of words and concepts at their margins which sometimes makes statutory construction an inexact process which is, perhaps, more of an art than a science. Indeed, I do not ignore that the oral communication, “I hate you,” is evidence of a killer’s malice just as is the assault, or that the sexual act does in a sense “communicate” affection. I do not mean that communication and evidence or communication and sex are mutually exclusive sets in a rigorous, mathematical sense. We figuratively say, “Acts speak louder than words.”
However, an act communicates better than words, and sex is communication, only in the limited sense that sometimes the inferences to be drawn from acts are very clear, often because the actor was not intent upon restricting the inferences that could be drawn from his or her acts, whereas the actor can so easily lie with words. The point is that when a Legislature uses a word in a penal statute, unless the legislative history indicates otherwise, it is not speaking figuratively by poetic images, allegory, and figures of speech. Rather, the Legislature seeks to express the will of the people in direct, concrete, plain terms, not relying on peripheral meanings and innuendo when dealing with such a serious subject as the life and liberty of its citizens. Sexual conduct is not a direct, concrete, plain meaning of the term “communication”; we speak figuratively, poetically, romantically when we say that sexual intimacy communicates the thoughts and feelings of one for another.
In the context of this case, the legislative use of the plain and ordinary meaning of words means using the most general and unrestricted terms when it desires a broadly inclusive reading. The judiciary has recognized this legislative practice by the general rule of construction that the statutory construction most favorable to the defendant [generally the least inclusive] will be used when the statute is reasonably susceptible of two interpretations and legislative intent does not point to one of them. (People v. Alday (1973) 10 Cal.3d 392, 394-395 [110 Cal.Rptr. 617, 515 P.2d 1169].)
Thus, the majority is wrong in saying that the Legislature would have said “conversation” if they meant to preclude sexual conduct. If the Legislature had intended to reach the recording of private sexual conduct it would have used a term such as “confidential activity,” an unmistakeably broad and all inclusive term, not “confidential communication,” as it did, which only includes sexual intimacy in an unusual, nonliteral, figurative sense. It cannot reasonably be held that the Legislature intended by the use *1215 of the term “communication” to lead us into the fog-shrouded maze of the mind’s associations connected with one of humanity’s most fundamental, complex, and poorly understood drives.
Having decided that the language of the statute does not support the majority’s construction, I turn to other evidence of legislative intent recognizing that “There are limits to this freedom to tamper with statutory language ...[.] The primary source of the legislative intent and purpose is in the words used; if these are clear the court should not seek hidden motive or objects which do not appear on the face of the statute or from its legislative history.’ [Citation.]” (Holder v. Superior Court (1969) 269 Cal.App.2d 314, 317-318 [74 Cal.Rptr. 853].) Contrary to the majority’s holding, the above discussion justifies the holding that the term “communication” clearly does not embrace sexual conduct. We find no contrary indication in the legislative history which this court has examined consisting of the documents in the California State Archives concerning Assembly Bill No. 860 passed in 1967. (Stats. 1967, ch. 1509, pp. 3584-3591.)
Former sections 653i and 653j, repealed in 1967 by Assembly Bill No. 860, are the predecessors of section 632. (Stats. 1967, ch. 1509, §§ 8, 9, p. 3589.) Section 653i, characterized by the Legislature as “relating to eavesdropping on confidential communications, ” prohibited the unconsented recording of conversations between a person in police custody and his or her attorney, religious advisor, or physician, indicating the terms were at the time considered equivalent. (Stats. 1957, ch. 1879, § 1, p. 3285; see Van Boven, Electronic Surveillance in California: A Study in State Legislative Control (1969) 57 Cal.L.Rev. 1182, 1190, fn. 48 [“Section 653i proscribed the . . . recording of privileged communications'” (italics added)].) Section 653j changed the wording to “communication,” but, in view of the equivalency the Legislature accorded to the terms, this does not indicate any substantial increase in the breadth of the criminal prohibition, certainly not such an increase as would sweep along with it sexual conduct. More likely is the intent to include writings that were visually recorded.
The majority mentions the difference between the use of the term “communication” in section 632 and the use of “oral communication” in 18 United States Code sections 2510-2511. However, there is nothing in the California legislative history that indicates the more limited language of the federal statute was considered in drafting section 632, and, more on point, there is no indication whatever that the distinction indicated a legislative intent to include sexual conduct as a kind of communication. (See Van Bowen, supra, 57 Cal.L.Rev. at p. 1210 [“the ‘oral’ communications protected in the federal statute are substantially the same as the ‘confidential’ communications of section 632”].)
*1216 Section 630 sets forth the legislative intent in passing Assembly Bill No. 860, but cannot be read to support the majority’s construction. That section makes clear that the purpose of the act was not to prevent all invasions of privacy, but only those invasions resulting from “the development of new devices and techniques for the purpose of eavesdropping upon private communications . . . .” Thus, it makes clear that the Legislature was interested in protecting privacy by forbidding recording of private communications as a kind of “time-delayed” eavesdropping. The gravamen of recording private sexual conduct is not time-delayed eavesdropping, but time-delayed voyeurism, a wrong more directly related to section 647, subdivision (h), the “Peeping Tom” loitering subdivision. While voyeurism is clearly an invasion of privacy, section 630 nowhere indicates the Legislature’s intention to protect privacy by punishing voyeurism. To construe Assembly Bill No. 860 as an antivoyeurism statute is the kind of judicial legislation condemned in Keeler. (2 Cal.3d at pp. 632-633.)
Furthermore, the legislative history of Assembly Bill No. 860 is replete with references to conversations, not nonverbal acts, as the equivalent of communications. The “Digest of Assembly Bill No. 860 (As Amended, June 5, 1967)” by then Assembly Speaker Jesse M. Unruh notes that “Under existing law, Penal Code section 653j, confidential conversations may be eavesdropped upon or recorded if only one party to the conversation gives his consent.” (P. 3.) This at once shows the Assembly Speaker, and sole sponsor of Assembly Bill No. 860, equated the “communication” sections 653j and 632 with conversation, and shows the defect in section 653j that primarily motivated the adoption of section 632—that a participant could consent to the eavesdropping or recording of a communication without the consent of all participants.
The understanding of the term “communication” as referring to a conversation is also evidenced by a memorandum in the state archives file on Assembly Bill No. 860 to Speaker Unruh’s legislative assistant from “Clyde Blackmon, Consultant, Committee on Criminal Procedure.” It states with reference to section 653j, “The premise underlying the law is that recording a conversation or authorizing an outsider to eaves drop is permissible . . . .” (P. 3.) How the Legislature viewed the term “communication” in section 653j indicates how the Legislature understood the same term in section 632 because the “Bill Digest” prepared for the public hearing on April 25, 1967, before the Assembly Committee on Criminal Procedure states that section 632, subdivision (c), “Defines the words ‘confidential communication’ and is adapted without change from the existing section 653j(c).” (P. 2.)
Thus, the legislative history shows that the Legislature never considered the issue of recording private activities as opposed to conversations, much *1217 less sexual conduct, and was intent upon protecting privacy by preventing the recording of verbal communication. Without any support in the legislative history, the majority’s unusual construction of communication to include sexual conduct is without support and a violation of the separation of powers prohibition against judical legislation as well as the due process requirement that a defendant have fair notice that a statute applies to the act he or she committed.
I now reach the third aid to proper construction of a statute, case law, and find that as unsupportive of the majority’s interpretaion of the term “communication” as is the language and legislative history of section 632.
The majority quotes the California Supreme Court to the effect that almost any act could be an attorney-client communication if it were intended as such. (City & County of S. F. v. Superior Court (1951) 37 Cal.2d 227, 235-236 [231 P.2d 26, 25 A.L.R.2d 1418].) We first observe that the act specifically considered in that case was “a neurolgical and psychiatric examination” requested by the client’s attorneys. (37 Cal.2d at pp. 230-231.) The Supreme Court held that the examination and its results came within the attorney-client privilege, the doctor being “an intermediate agent for communication” (37 Cal.2d at p. 234), likening the examination to the examples listed in the full quotation of the above passage taken from 8 Wigmore, Evidence, (3d ed. 1940): “ ‘The client, supposedly, may make a specimen of his handwriting for the attorney’s information, or may exhibit an identifying scar, or may show a secret token. If any of these acts are done as part of a communication to the attorney, and if further the communication is intended to be confidential. . ., the privilege comes into play.’ [Citation.]” (37 Cal.2d at p.236.)
I have no quarrel with the Supreme Court’s holding, but find it inapplicable. Conceivably an attorney might engage an expert to evaluate an injured plaintiff’s sexual performance in the context of trying to prove injury, in which case any sexual conduct evaluated would come within the privilege as part of a communication to the attorney. However, in that context the sexual conduct per se would not be the communication with the attorney any more than would be any message in the words written as a sample of a client’s handwriting. It is the characteristics of the act, not the act itself, that truly constitutes the communication to the lawyer, taking the place of the client’s verbal description of the act or condition. Thus, the Supreme Court’s holding that an act may be a communication for the purposes of the attorney-client privilege is not a holding that sexual conduct is communication for the purposes of section 632.
Furthermore, even if the rule in attorney-client privilege cases were applicable, a requirement of that rule was not the subject of any evidence or *1218 argument in the record I have seen. That requirement is proof that the sexual conduct was intended as a communication instead of merely a pleasurable experience.
The majority opinion cites Granite Construction Co. v. Superior Court (1983) 149 Cal.App.3d 465, at page 470 [197 Cal.Rptr. 3, 45 A.L.R.4th 1011], for the proposition that the construction of a statute so as to punish a particular act for the first time does not violate due process. I do not dissent for that reason; I dissent because there is no language, case, or statute, such as there was in Granite Construction, that gave fair notice of the extension of the term “communication” to sexual conduct. (See 149 Cal.App.3d at pp. 467-468, 470 [corporation could be prosecuted for manslaughter since § 192 requires only “killing of a human being” as opposed to requirement in other states’ statutes of killing “ ‘of a human being ... by another’ ” and § 7 defines “person” to include corporation].)
The majority misconstrues People v. Sobiek (1973) 30 Cal.App.3d 458 [106 Cal.Rptr. 519, 82 A.L.R.3d 804] to support its argument that “we are convinced defendant received fair warning. There can be little doubt defendant knew that in recording the sexual activity without the woman’s consent, he was violating her right of privacy and that ‘common social duty’ would suggest a ‘more circumspect conduct.’” (Maj. opn., ante, at pp. 1210-1211.) While the court in Sobiek does quote a previous case to that effect, the court in the following paragraph narrowly construes the broad statement of law quoted and underlined by the majority: “ ‘common social duty’ would have forewarned respondent that ‘circumspect conduct’ prohibited robbing his partners and also told him that he was stealing ‘property of another.’ ” (30 Cal.App.3d at pp. 474-475, italics added.)
Just as section 487, the section Sobiek violated, protects property by punishing the taking of property by theft but does not punish the taking of property by burglary, section 632 protects privacy by punishing the recording of confidential communications but does not punish the recording of private sexual conduct. While “‘common social duty’ would have forewarned” Sobiek that he was committing theft by stealing his partners’ property, “ ‘common social duty’ would [not] have forewarned” Gibbons that he was recording a confidential communication by recording private sexual conduct. The forewarning must be of the offense punishable by the statute allegedly violated, not the violation of the broad societal interest that the statute protects.
I conclude that no case law supports the majority’s construction of the term “communication” in section 632 to include sexual conduct. Since this construction also subverts the common, ordinary meaning of the term in *1219 favor of an ununsual meaning finding no support in the legislative history, I find it to be judicial legislation enlarging the scope of section 632 without the fair notice to the defendant required by due process.
Appellant’s petition for review by the Supreme Court was denied March 15, 1990.

 Section references are to the Penal Code unless otherwise indicated.

 My review of the record causes me to question whether the central issue of this appeal is correctly before us. The case was presented to the jury in the prosecuting attorney’s argument as being based on verbal communication in the alternative: “I would submit to you and I’m sure you would agree with me that the act of human sexual relations is [an] act of communicating feelings. You’ll also remember in the tapes we saw there was some verbal communication [—] the defendant and the three victims spoke to each other. As such we have communication for the purposes of this proceeding.” Counsel for the defendant did not contend that there were no verbal communications with each of the victims or that any verbal communications were any less confidential than the sexual conduct. The defense was that the circumstances indicated that none of the victims considered the sexual and verbal conduct between each of them and the defendant to have been confidential. Thus, whether or not recording sexual conduct is a violation of section 632, the recording of verbal communication indisputably is, and defendant was guilty of the charged violations under the latter theory, and the question of whether “communication” includes sexual conduct need not be decided. An appellate court will not ordinarily review a moot question. (See, Witkin, Cal. Criminal Procedure (1963) § 682, pp. 665-666 [unreviewable matters include those which are moot, not injurious to the defendant, or do not provide a basis for reversal]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 243, 517, 527, pp. 249-250,499-500, 513. But see, id. § 526, pp. 509-510 [public interest exception]; People v. Woodhead (1987) 43 Cal.3d 1002, 1007, fn. 4 [239 *1212 Cal.Rptr. 656, 741 P.2d 154] and accompanying text [exception for construction of statute of statewide significance].)
Furthermore, I have found nothing in the record indicating that the defendant ever disputed the district attorney’s argument or the trial court’s ruling out of the jury’s presence that sexual conduct is a form of communication, precisely because the district attorney was prosecuting on the alternative basis of the verbal communication. In discussing the case, the trial court said to defense counsel, “Now you go up on appeal and they say you know what, the Judge was wrong. He should have never let the sex acts go to the jury as a confidential communication, it’s clear they weren’t. You’re still dead in the water because the verbal conduct was. Do you follow me? [j|] [Defense Counsel]: Uh-huh.” Indeed, the trial court never instructed that sexual conduct was communication, only that “A person may communicate with another by . . . physical acts, gestures or any common system of symbols, signs or behavior, . . .” The record contains no objection to this instruction and indicates that defense counsel acquiesced in both the instruction and the ruling. Thus, any error was waived or invited and, therefore, at least arguably not preserved for appeal. While it is sometimes broadly stated that constitutional error may be raised for the first time on appeal (In re Mazoros (1977) 76 Cal.App.3d 50, 54 [142 Cal.Rptr. 609]), that is not always the case (see, e.g., People v. Collie (1981) 30 Cal.3d 43, 49, fn. 1 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776] and accompanying text). Nevertheless, the issue of waiver of constitutional error is often bypassed, rightly or wrongly, to preclude a petition for writ of habeas corpus on the ground of ineffective assistance of counsel, which is typically used to circumvent a waiver. (See, e.g., id. at pp. 49-50.)