STATE of Wisconsin, Plaintiff-Respondent,

v.

Richard ROGNRUD, Defendant-Appellant.

Court of Appeals

*No. 89-1944-CR. Submitted on briefs March 6, 1990.—Decided May 30, 1990.*

(Also reported in 457 N.W.2d 573.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William H. Thorie* of *Doar, Drill & Skow, S.C.* of Baldwin.

On behalf of the plaintiff-respondent, a brief was submitted on the brief of *Donald J. Hanaway,* attorney general, and *David J. Becker,* assistant attorney general, of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. Richard Rognrud appeals a judgment of conviction for third-degree sexual assault in violation of sec. 940.225(3), Stats. He challenges the trial court's ruling that barred him from presenting extrinsic evidence of three prior allegedly false accusations of sexual assault made by the complaining witness, T.C. We affirm.

Although the court permitted defense counsel to cross-examine T.C. about three other alleged false reports of sexual assault, two involving T.C. and one involving her young son, the court refused to allow other witnesses to testify whether T.C.'s prior statements were false. Rognrud says that the provisions of the Wisconsin rape shield law, sec. 972.11(2), Stats., support his contention that the excluded extrinsic evidence was admissible.[1] While the rape shield law excludes references to

---

[1]Section 972.11 provides in part:

(1) Except as provided in subs. (2) to (4), the rules of evidence . . . shall be applicable in all criminal proceedings . . ..

. . ..

785

prior sexual conduct of the complaining witness, it recognizes three exceptions, including the one Rognrud relies upon: "[e]vidence of prior untruthful allegations of sexual assault made by the complaining witness." Sec. 972.11(2)(b)3, Stats. Rognrud's offers of extrinsic evidence as to the three prior allegations raise related but separate issues.

## THE VIRGINIA INCIDENT

Some nine or ten years prior to the Rognrud incident, T.C. and a young female companion ran away from home. T.C. later reported being sexually assaulted by an unspecified number of men who had picked up the girls as they hitchhiked across the state of Virginia. At Rognrud's trial, as part of cross-examination, T.C. repeated her claim of the Virginia sexual assault. T.C.'s traveling companion testified as an offer of proof out of the jury's presence that no sexual assault had occurred. The trial court ruled that because the two conflicting stories were equally plausible, the defense had failed to show by even a preponderance of the evidence that there had been a false allegation by T.C. Ordinarily, credibility of conflicting witnesses is a matter for the jury.

---

(2)(b) If the defendant is accused of a crime under s. 940.225 . . . any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, subject to s. 971.31(11):

. . ..

3. Evidence of prior untruthful allegations of sexual assault made by the complaining witness.

Rognrud points to *State v. DeSantis*, 151 Wis. 2d 504, 445 N.W.2d 331 (Ct. App. 1989), holding that a question of credibility involving conflicting evidence of a prior false sexual assault allegation is a jury issue and is not to be determined by the trial judge as a prerequisite to admissibility. *DeSantis*, however, includes no discussion of the limitations of sec. 906.08(2), Stats. We therefore assume that the restriction of sec. 906.08(2), Stats., was not raised in *DeSantis*.

Section 906.08(2), Stats., provides in part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of crimes as provided in s. 906.09, may not be proved by extrinsic evidence. They may, however, *subject to s. 972.11(2),* if probative of truthfulness or untruthfulness and not remote in time, be inquired into on cross-examination of the witness . . .. (Emphasis supplied.)

This statute forbids use of extrinsic evidence to impeach a witness' credibility on a collateral matter. *McClelland v. State,* 84 Wis. 2d 145, 159, 267 N.W.2d 843, 849 (1978). A matter is collateral if the fact as to which error is predicated could not be shown in evidence for any purpose independently of the contradiction. *Id.* at 159, 267 N.W.2d at 850 (citing 3A Wigmore on Evidence sec. 1003 at 961 (1970)). The companion's testimony was by this test collateral in Rognrud's trial.

Construction of a statute is a question of law. *Lewandowski v. State,* 140 Wis. 2d 405, 408, 411 N.W.2d 146, 148 (Ct. App. 1987). The primary purpose of statutory construction is to give effect to the legislative intent behind the statute, and the first resort is to

the language of the statute itself. *Weiss v. Regent Properties,* 118 Wis. 2d 225, 229, 346 N.W.2d 766, 768 (1984).

The language of sec. 906.08(2), Stats., unambiguously permits cross-examination about prior specific instances of conduct "subject to sec. 972.11(2) . . .." Read together, secs. 972.11(2) and 906.08(2) not only exclude extrinsic evidence of a witness' prior conduct, those statutes prohibit even the cross-examination of a complaining witness about her prior sexual conduct unless several conditions exist. First, the matter of inquiry must fall within one of the three exceptions to the rape shield law. Sec. 972.11(2)(b)1, 2 and 3, Stats.[2] Second, the trial court must hold a pretrial hearing to determine whether the matter under discussion is "material to a fact at issue in the case and of sufficient probative value to outweigh its inflammatory and prejudicial nature before it may be introduced at trial." Sec. 971.31(11), Stats. Third, the court must also decide whether the inquiry into specific instances of prior conduct is probative of truthfulness or untruthfulness and whether the matter is too remote in time to permit inquiry. Sec. 906.08(2), Stats.

Rognrud's reading of the rape shield law would permit extrinsic evidence of prior conduct of a complaining witness in sexual assault cases even though the same

---

[2]Rognrud raises no claim to a violation of his sixth amendment confrontation rights that may require the expansion of the rape shield law. *See State v. Herndon,* 145 Wis. 2d 91, 426 N.W.2d 347 (Ct. App. 1988), using the balancing test found in *Davis v. Alaska,* 415 U.S. 308 (1974). In *Herndon,* the extrinsic evidence was not a general attack on the witness' character, it was aimed at revealing possible "biases, prejudices or ulterior motives of the witness" as they may relate directly to issues or personalities in the case at hand. *Id.* at 103, 426 N.W.2d at 352.

type of evidence is inadmissible in all other cases. In other words, the defense, according to Rognrud, could introduce extrinsic evidence of prior false allegations of sexual assault, despite the well-known legislative purpose of rape shield laws to protect the complaining witness. *See Herndon,* 145 Wis. 2d at 105, 426 N.W.2d at 352.

The court in its discretion permitted counsel to cross-examine T.C. concerning the truthfulness of her allegation. Although the trial court did not rely on sec. 906.08(2), Stats., to reject the extrinsic evidence, this is of no consequence. Where the trial court makes the right decision for the wrong reason, this court will affirm. *State v. Alles,* 106 Wis. 2d 368, 391, 316 N.W.2d 378, 388 (1982).

## THE J.T. INCIDENT

The defense also offered what it characterized as prior untruthful allegations of sexual assault made by T.C. when she was about fourteen years old involving J.T. Generally, the same discussion and conclusions applicable to the Virginia incident would apply here. There was, however, a strong basis to suggest the court could have rejected even the cross-examination concerning this incident, and there was certainly no basis to allow extrinsic evidence. J.T. testified at an offer of proof hearing as follows:

> Q Am I correct that within the last six—any time before the last six years before today you deny having sexual intercourse with [T.C.]?
>
> A I can't deny having sexual intercourse with [T.C.].
> . . ..

Q Is it true, sir, you have testified about this incident where you woke up and found [T.C.] in your bed and there seems to be some confusion on your part about whether anything happened. In light of that can you say with 100 percent certainty that there was no sexual intercourse between you and [T.C.] at that time?

A As far as I know nothing ever went on in that bed.

. . ..

Q Now, in response to Detective Cassing's question, of whether or not you'd had sexual intercourse with [T.C.] do you recall stating I guess it must have happened?

A I might have said that.

Q Okay. And you also recall claiming to him that anything which had happened had only happened one time?

A Yes.

Q And do you recall stating that you would only had (sic) sexual contact once with [T.C.]?

A I will not say I really had sexual intercourse with her or contact with her.

Q There seems to be a little confusion on your part there, sir. Why don't you go ahead and tell me what gives you cause for concern here?

A Okay. I was drunk real good and drunk and I woke up and the kid was in my bed and now, this is all I know and when I woke up I told her to get out.

Q Do you recall telling detective Cassing that if anything did happen you would probably be too intoxicated to remember it?

A That's right.

790

. . ..

Q Just one thing, did you or did you not have sexual intercourse with [T.C.]?

A I do not know. I do not know.

Q Is it your testimony then it could have happened?

A It could have and it might not have. I don't know. Maybe it did and maybe it didn't.

■

Despite the ambiguity in J.T.'s testimony and the age of the incident, the court permitted cross-examination of T.C. She said that the assault did occur and explained that she had at one time retracted the accusation "because I couldn't do it to [J.T.]." In these circumstances, the trial court would have been justified in refusing to allow any evidence of the incident. Rognrud was not prejudiced by limiting the inquiry to cross-examination.

## THE R.P. INCIDENT

Finally, the defense offered to prove that T.C. had falsely accused R.P. of sexually molesting T.C.'s child. In the offer of proof, R.P. testified that she had not molested the child, while Rognrud's sister testified that T.C. had claimed otherwise in the presence of several witnesses. T.C. testified on cross-examination at trial that she never made the accusation.

■

The trial court correctly concluded that the allegation in question was not controlled by the rape shield law at all. Sexual conduct is defined in sec. 972.11(2), Stats., to mean conduct relating to sexual activities of the com-

plaining witness.[3] The alleged sexual conduct involved here related to the complaining witness' child and another. Section 972.11 is therefore not controlling. The trial court permitted extensive cross-examination of T.C. on the matter. This was consistent with sec. 906.08(2), Stats., and there was no error.

In conclusion, the trial court properly excluded extrinsic evidence of collateral matters, and the judgment of conviction is upheld.

*By the Court.*—Judgment affirmed.

[3]Section 972.11(2)(a) provides in part: "In this subsection, 'sexual conduct' means any conduct or behavior *relating to sexual activities of the complaining witness . . ..*" (Emphasis supplied.)