STATE of Wisconsin, Plaintiff-Appellant,

v.

Paul TIMM, Defendant-Respondent.†

Court of Appeals

*No. 90-2781. Submitted on briefs June 10, 1991.—Decided June 25, 1991.*

(Also reported in 472 N.W.2d 593.)

† Petition to review denied.

On behalf of plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Thomas J. Balistreri,* assistant attorney general, of Madison.

On behalf of defendant-respondent, the cause was submitted on the brief of *Richard M. Lawson* of *Lawson Law Office* of Wausau.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   The state of Wisconsin appeals an order dismissing a criminal complaint against Paul Timm. Timm, who put ant killer in Quinton Woller's beverage, is charged with violating sec. 941.325, Stats., which makes it a felony to tamper with "candy or other edibles" with the intent to cause bodily harm.[1] The trial court held that the statute applies only to tampering with solids and does not include tampering with liquids or drinkables. We conclude that the term "edibles" as used in sec. 941.325 includes both solids and liquids and reverse the trial court.

---

[1]Timm was initially charged with recklessly endangering safety in violation of sec. 941.30(2), but the trial court found that there was no probable cause to bind Timm over because there was insufficient evidence that he knew he created a substantial risk of death or great bodily harm by putting the ant killer in the drink. The state has not appealed this ruling.

Timm and Woller were at a party when Timm got mad at Woller. Timm decided that he wanted to "make Quinton sick" and would "put something in [Woller's] drink . . . to make him puke." Timm mixed a drink of orange and grape juice with one-half of a two-ounce bottle of ant killer. The ant killer contained .6% arsenic; the label on the bottle cautioned that the ant killer could be fatal if swallowed but Timm apparently failed to read it. A friend, however, warned Timm about the dangerousness of the ant killer, and Timm poured half of the mixture out and filled the rest of the glass with more juice. Timm then gave the drink to Woller, who drank the entire glassful. The record does not disclose the result.

The issue presented is whether placing ant killer into a beverage falls within the conduct proscribed by sec. 941.325, Stats. The interpretation of a statute is a question of law we review without deference to the trial court. *State v. Denter*, 121 Wis. 2d 118, 122, 357 N.W.2d 555, 557 (1984).

Section 941.325, Stats., provides: "Whoever places objects, drugs or other substances in candy or *other edibles* with the intent to cause bodily harm to another person is guilty of a Class E felony." (Emphasis added.) This case presents the first opportunity this court has had to pass upon sec. 941.325, which was enacted in ch. 72, Laws of 1971.

The threshold question when construing a statute is whether the statutory language is ambiguous. *State v. Williquette*, 129 Wis. 2d 239, 248, 385 N.W.2d 145, 149 (1986). Statutory language is deemed ambiguous if reasonable persons could disagree as to its meaning. *Id.* Only if the language is ambiguous are we permitted to

look beyond the statutory language to examine the scope, history, context, subject matter and object of the statute to discern the legislative intent. *State v. Pham,* 137 Wis. 2d 31, 34, 403 N.W.2d 35, 36 (1987). Therefore, the starting point for our interpretation of sec. 941.325, Stats., is the language of the statute itself.

The word "edibles" is not defined in the statute. Resort to the dictionary leads to alternate definitions. "Edible" is generally defined as "food." *Webster's Third International Dictionary* 722 (unabr. 1976). "Food", in turn, may mean any "material . . . taken or absorbed into the body . . . to sustain growth . . . and to furnish energy" or it may mean only nutriments "in solid form [as] opposed to *drink.*" *Id.* at 884 (emphasis in original). We therefore conclude that the term "other edibles" as used in sec. 941.325, Stats., is ambiguous. A reasonable person could conclude that the term applies only to solid foods or that the term includes all food, solids and liquids alike.

Because the statute is ambiguous, we review the legislative history to aid in our statutory construction. *Pham,* 137 Wis. 2d at 34, 403 N.W.2d at 36. State Representative Hephner requested the drafting of Assembly Bill 108 in the fall of 1970 in order to address the problem of "Halloween Candy Felony" by making it a "[f]elony to place foreign objects—or substances—in trick or treat candy." The bill was drafted as requested, except the phrase "trick or treat," which modified the word "candy," was omitted. The bill was enacted into law in that form. *See* sec. 941.325, Stats.

The overriding and primary objective in statutory construction is to achieve a reasonable construction that will effectuate the legislature's purpose. *Barnett v. LIRC,*

131 Wis. 2d 416, 420, 388 N.W.2d 652, 654 (Ct. App. 1986). Construction of ambiguous legislation is made in light of the evil sought to be remedied. *State v. Clausen,* 105 Wis. 2d 231, 239, 313 N.W.2d 819, 823 (1982). Statutes should be construed to avoid absurd or unreasonable results. *See State v. Skow,* 141 Wis. 2d 49, 56, 413 N.W.2d 650, 653 (Ct. App. 1987). The purpose of sec. 941.325, Stats., is to protect people from harm from ingesting tampered food. Timm argues that since this is a penal statute, it should be strictly construed against the state; accordingly, we should conclude that the statute does not apply to liquids. While criminal statutes are ordinarily strictly construed, this rule does not command that a statute be given its narrowest possible construction where to do so would be inconsistent with the legislative intent. *State v. Devitt,* 82 Wis. 2d 262, 269, 262 N.W.2d 73, 77 (1978).

To construe sec. 941.325, Stats., so that it is a crime to tamper with solid but not liquid food is inconsistent with the apparent legislative intent. The state aptly points to examples: the statute would bar insertion of pins or needles into candy bars, but not the lacing with poison of boxed juice or apple cider under the same circumstances; the statute would apply to injection of arsenic into an orange, but not to putting arsenic in juice squeezed from the orange; and it would apply to tampering with malts or milk shakes in a solid frozen state, but not to tampering with them if melted into a liquid state. Further, the language of the statute as adopted does not purport to apply only to food given out on Halloween. We will not conclude that the legislature intended unreasonable results, therefore we hold that sec. 941.325 applies to liquid edibles, as well as solid edibles, and

Timm's conduct in putting the ant poison into Woller's beverage is proscribed by the statute.

While Timm does not mount a constitutional attack on the statute, we note that "it is not sufficient to void a criminal statute . . . to show merely that the boundaries of the area of proscribed conduct are somewhat hazy . . . or that there may exist particular instances of conduct the legal or illegal nature of which may not be ascertainable with ease." *State v. Courtney,* 74 Wis. 2d 705, 711, 247 N.W.2d 714, 718–719 (1976). "Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *Boyce Motor Lines v. United States,* 342 U.S. 337, 340 (1952).

*By the Court.*—Order reversed.