STATE of Wisconsin, Plaintiff-Respondent,

v.

Richard KNUTSON, INC., Defendant-Appellant.†

Court of Appeals

*No. 93–1898–CR. Submitted on briefs April 18, 1995.—Decided July 26, 1995.*

(Also reported in 537 N.W.2d 420.)

†Petition to review denied.

90

On behalf of the defendant-appellant the cause was submitted on the briefs of *John H. Hinderaker* and

*Ann Marie Hanrahan* of *Faegre & Benson* of Minneapolis, Minnesota.

On behalf of the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Daniel J. O'Brien,* assistant attorney general.

Before Anderson, P.J., Brown and Nettesheim, JJ.

ANDERSON, P.J.   Principles of elementary comparative justice, Wisconsin's tradition of holding corporations criminally liable and persuasive public policy considerations support our conclusion that corporations may be prosecuted for homicide by negligent use of a vehicle. We affirm the conviction of Richard Knutson, Inc. (RKI) holding that it is within the class of perpetrators covered by the statute and that there was sufficient evidence presented at trial to support the jury's verdict.

FACTS

In the spring of 1991, RKI undertook the construction of a sanitary sewer line for the City of Oconomowoc. On May 20, 1991, while working in an area adjacent to some Wisconsin Electric Power Company power lines, a work crew attempted to place a section of corrugated metal pipe in a trench in order to remove groundwater. The backhoe operator misjudged the distance from the boom of the backhoe to the overhead power lines and did not realize he had moved the stick of the boom into contact with the wires. In attempting to attach a chain to the backhoe's bucket, a member of the crew was instantly electrocuted.

The State subsequently charged RKI with negligent vehicular homicide under § 940.10, STATS. RKI

denied the charge, disputing both the applicability of the negligent vehicular homicide statute to corporations, as well as the substantive allegations themselves. Prior to trial, RKI's motion to dismiss the information was denied. The jury found RKI guilty as charged. The trial court entered judgment, concluding that the evidence was sufficient to support the verdict. RKI appeals.

We initially certified this case to the Wisconsin Supreme Court pursuant to RULE 809.61, STATS. The question the supreme court accepted for consideration was: "Whether a corporation may be prosecuted under the terms of § 940.10, STATS., which provides that '[w]hoever causes the death of another human being by the negligent operation or handling of a vehicle is guilty of a Class E felony.'"

In a per curiam opinion, the supreme court announced that it was equally divided on whether to affirm or reverse the judgment of conviction. *State v. Richard Knutson, Inc.,* 191 Wis. 2d 395, 396, 528 N.W.2d 430, 431 (1995) (per curiam). The supreme court concluded that in the interest of justice it would vacate its decision to accept the appeal on certification and return the case to this court for our consideration. *Id.*

CONSTRUCTION OF HOMICIDE STATUTE

RKI raises the same challenges to § 940.10, STATS., —homicide by negligent operation of a vehicle statute—as it did in the trial court. The trial court held that § 940.10 covered acts by corporations. Reasoning from a series of decisions, including *Vulcan Last Co. v. State,* 194 Wis. 636, 644, 217 N.W. 412, 415 (1928), the trial court quoted *Vulcan Last* when it concluded, "'*Prima facie*,' the word 'person,' in a penal statute

93

which is intended to inhibit an act, means 'person in law'; that is, an artificial, as well as a natural, person, and therefore includes corporations, if they are within the spirit and purpose of the statute." The trial court decided that corporate liability was within the spirit of § 940.10, stating, "The purpose of the statute is to protect employees or anyone from the negligent conduct of another which may cause death. It should not matter that the 'another' is a person or corporation as long as the conduct is criminal . . .."

On appeal, RKI insists that a corporation cannot be held accountable for homicide. RKI argues that "[t]he statute uses the word 'whoever' and the correlative phrase '<u>another</u> human being.' In the context of this sentence, 'whoever' necessarily refers to a human being. By its own terms, the statute therefore limits culpability for homicide by operation of a vehicle to natural persons." RKI contends that § 940.10, STATS., is an ambiguous penal statute that must be interpreted in its favor under the rule of lenity.

The State contends that the statute is unambiguous and includes corporations within a broad class of perpetrators. Relying on *Kenosha Unified Sch. Dist. No. 1 v. Kenosha Educ. Ass'n,* 70 Wis. 2d 325, 332, 234 N.W.2d 311, 314 (1975), the State argues that when used in the homicide statutes, the word "whoever" refers to natural or corporate persons. The State reasons that either can be liable for taking the life of "another human being."

This issue requires us to construe § 940.10, STATS. Because construction of a statute is a question of law, we proceed with this undertaking independently of the trial court. *See State v. Wilson,* 170 Wis. 2d 720, 722, 490 N.W.2d 48, 50 (Ct. App. 1992). Our task is to inter-

pret the meaning of the terms "whoever" and "another human being" within the context of the homicide statute. *See State v. Hurd,* 135 Wis. 2d 266, 276, 400 N.W.2d 42, 46 (Ct. App. 1986). The primary goal of our interpretation of statutory words is to ascertain and give effect to the legislature's intent, and our first resort is to the language of the statute itself. *State v. Rognrud,* 156 Wis. 2d 783, 787-88, 457 N.W.2d 573, 575 (Ct. App. 1990). If the statutory language is of uncertain meaning, we will then refer to the canons of statutory construction and consider the scope, history, context, subject matter and object of the statute in order to discover legislative intent.[1] *See Wilson v. Waukesha County,* 157 Wis. 2d 790, 795, 460 N.W.2d 830, 832-33 (Ct. App. 1990).

A statute is ambiguous when it is capable of being interpreted in two or more ways by reasonably well-informed persons. *Id.* at 795, 460 N.W.2d at 833. An ambiguity does not exist merely because the parties disagree on a statute's meaning. *Holy Family Catholic Congregation v. Stubenrauch Assocs., Inc.,* 136 Wis. 2d 515, 521, 402 N.W.2d 382, 385 (Ct. App. 1987). We must examine the language of the statute to decide if the parties' different views are warranted. *Id.*

---

[1] As Professor James Willard Hurst comments in his book, JAMES W. HURST, DEALING WITH STATUTES 56 (1982):

> [This] formula serves the proper separation of powers principle so far as it provides a persistent reminder to those who must apply statutes that the legislature is entitled to set the frame of public policy, and that the text it votes into the statute books is its most positive and deliberate exercise of that function.

Here, the statute does not provide a definition of "whoever."[2] *See* § 940.10, STATS. It is left to the reader to determine if "whoever" should be read expansively to include natural and artificial persons, or should be read narrowly and have its definition gleaned from its reference to the correlative phrase "another human being." *See id.* We conclude that because reasonably well-informed persons could differ as to who might be a perpetrator, the statute is ambiguous.

We will thus employ extrinsic aids to uncover the legislature's intent. RKI reminds us of the rule of lenity; under this rule we are required to construe all penal statutes strictly in favor of the defendant. *See State v. Olson,* 106 Wis. 2d 572, 585, 317 N.W.2d 448, 454 (1982). However, it is also a canon of statutory construction that "[c]onstruction of ambiguous legislation is made in light of the evil sought to be remedied." *State v. Timm,* 163 Wis. 2d 894, 899, 472 N.W.2d 593, 595 (Ct. App. 1991).

> Where a penalty is involved it has been said that while such statute must be construed with such strictness as carefully to safeguard the rights of the defendant and at the same time preserve the obvious intention of the legislature, the rule of strict construction is not violated by taking the common-sense view of the statute as a whole and giving

---

[2] The statute defines terms applicable to the homicide statutes, and important to this decision, in two different places. First, § 939.22(16), STATS., defines "[h]uman being" when used in the homicide sections to mean "one who has been born alive." Second, § 990.01(26), STATS., defines "[p]erson" to include "all partnerships, associations and bodies politic or corporate."

effect to the object of the legislature, if a reasonable construction of the words permits it.

*Zarnott v. Timken-Detroit Axle Co.,* 244 Wis. 596, 600, 13 N.W.2d 53, 54 (1944).

The rule of lenity does not require us to give § 940.10, STATS., the narrowest possible construction where to do so would be inconsistent with the legislature's intent. *See Zarnott,* 244 Wis. at 600, 13 N.W.2d at 54. The primary goal of statutory construction is to carry out the legislature's intent; the tools of statutory construction, including the rule of lenity, cannot be used in disregard of the purpose of the statute. *See State v. Hopkins,* 168 Wis. 2d 802, 814, 484 N.W.2d 549, 554 (1992). In this process, sometimes a strict construction and sometimes a liberal construction of a penal statute are required to carry out the legislative purpose.[3] *Id.*

Professor James Willard Hurst provides guidance. First, he suggests that the very nature of today's society makes it impossible for the members of the legislature to forecast "the particular condition or set of facts to which someone now suggests applying the statute." JAMES W. HURST, DEALING WITH STATUTES 35 (1982). According to Hurst, the legislators may well have supplied "sufficient specifications to provide a discernible frame of reference within which the situation now presented quite clearly fits, even though it represents in some degree a new condition of affairs unknown to the lawmakers." *Id.*

---

[3] Hurst has recognized that the emphasis of the courts is not on broad, standardized formulas of construction, but "on custom-built determinations, fashioned out of materials immediate and special to the legislation at issue." HURST, *supra* note 1, at 65.

Second, he submits that "as a vital element in the community's life a statute is more than the text we find in the statute book." *Id.* at 41. Hurst argues that the text under judicial analysis gains its vitality from its past "—from the prior state of the law and the short-comings of that state of law"—and from its future "—from what those charged with applying it do to give it force, not only to promote its objectives but to over-come contrivances to evade its mandates." *Id.*

Finally, Hurst instructs those interpreting stat-utes that:

> the content of public policy may grow by accretion of statutory precedents in a fashion analogous to the growth of common law. Statutes dealing with a variety of subjects may begin to cluster around some common value judgment. Recognizing this reality, a court is warranted in finding evidence of legislative intent under a given act by reference to what legislators have done regarding like subjects under other acts.

*Id.* at 45.

The homicide statute in question deals exclusively with deaths caused by negligent operation of vehicles.[4]

Our task is to ascertain if the legislative intent is to include corporations within the class of perpetrators. This task is made more difficult by the legislature's use of the term "whoever" to identify the perpetrator of a

---

[4] Wisconsin's homicide statutes were enacted in their mod-ern day form by the Laws of 1955, ch. 696, § 1, and extensively revised in 1987 Wis. Act 399 § 472zkcn-zkct, zkd-zkg.

**940.10 Homicide by negligent operation of vehicle.** *Whoever* causes the death of *another human being* by the negligent opera-*tion or handling of a vehicle is guilty of a* Class E felony. [Emphasis added.]

crime and its failure to define that term. *See id.* Prior to 1955, the comparable provision of the statute encompassing homicide by negligent use of a motor vehicle, § 340.271(2), STATS., 1953, described the perpetrator as "any person." The statute defined "[p]erson" to include "all partnerships, associations and bodies politic and corporate." Section 370.01(26), STATS., 1953. Why, when it rewrote the criminal code in 1955, the legislature chose to describe perpetrators with the ambiguous term "whoever" is an enigma. *See* § 940.08, STATS., 1955.

Another mystery is the deletion of any statutory language establishing corporate liability for criminal acts. The proposed 1953 version of the criminal code contained a specific provision that held a corporation criminally liable for the acts of its agents when acting within the scope of their authority. *See* Laws of 1953, ch. 623, § 2 (proposing § 339.07, STATS., 1953). This provision was deleted from the 1955 formulation of the criminal code. As explained by William A. Platz, "This was eliminated, upon motion of an advisory committee member who was a house counsel for a large industrial corporation, although it was conceded that the 1953 code correctly stated the rule of law and that its omission from the code would not alter the rule." William A. Platz, *The Criminal Code*, 1956 WIS. L. REV. 350, 362-63 (footnote omitted).

Prior to adoption of Wisconsin's 1955 criminal code, a corporation could be held criminally liable. *See Vulcan Last,* 194 Wis. at 641-45, 217 N.W. at 414-16. *Vulcan Last* was an appeal from a criminal conviction of a corporation for discharging an employee who voted against the corporation's request for a municipal water treatment plant. *Id.* at 637-38, 217 N.W. at 413. The supreme court concluded that Wisconsin would follow

modern authority and hold corporations liable for criminal acts. *Id.* at 641-45, 217 N.W. at 414-16. RKI attempts to distinguish *Vulcan Last* by arguing that the statute involved described the perpetrator as a "person" defined to include corporations.

RKI's attempt fails because five years later the supreme court explained that "it is now well established that a corporation can be held guilty of crime when it is punishable by a fine . . . ." *State ex rel. Kropf v. Gilbert,* 213 Wis. 196, 212, 251 N.W. 478, 484 (1933). *Kropf* was a habeas corpus case in which the petitioners-appellants were challenging the sufficiency of the evidence at a preliminary hearing to support their being bound over for prosecution for embezzlement. *Id.* at 199-201, 251 N.W. at 479. The question was whether any of the petitioners-appellants, as agents of a corporation, were parties to the crime of the corporation converting or embezzling funds. *Id.* at 200, 251 N.W. at 479. The answer turned not on the description and definition of a perpetrator of embezzlement; rather, it turned on whether the perpetrator would be punished by imprisonment or a fine. *See id.* at 212, 251 N.W. at 483-84.

We conclude that prior to the enactment of the 1955 criminal code, the well-established rule in Wisconsin was that if a crime was punishable, in part, by a fine, a corporation could be criminally responsible.[5] We are satisfied that it was not the description of the perpetrator as a "person"—defined to include

---

[5] On at least three separate occasions, the Wisconsin Attorney General opined that a corporation can be held criminally liable when its conduct constitutes a violation of a criminal statute. *See* 1 OP. ATT'Y GEN. 193 (1913); 4 OP. ATT'Y GEN. 240 (1915); 53 OP. ATT'Y GEN. 132 (1964).

corporations—that governed corporate criminal liability.

We find it significant that in 1955 the legislature did not seek to highlight corporate criminal liability by including a provision as suggested in the 1953 proposed criminal code or by revoking the then-existing rule found in *Vulcan Last* and *Kropf*. The legislature's silence is indicative of its satisfaction with the supreme court's interpretation of the law. As the supreme court has written:

> When determining legislative intent, this court must assume that the legislature knew the law in effect at the time of its actions. Moreover, we presume that the legislature is aware that absent some kind of response this court's interpretation of the statute remains in effect. Legislative silence with regard to new court-made decisions indicates legislative acquiescence in those decisions. [Citations omitted.]

*State v. Olson,* 175 Wis. 2d 628, 641, 498 N.W.2d 661, 666 (1993).

The legislature had another opportunity to consider the reach of the homicide statutes in 1987 when it substantially modified ch. 940, STATS. This consideration came after the decision in *State v. Dried Milk Prods. Co-op.,* 16 Wis. 2d 357, 114 N.W.2d 412 (1962), which reaffirmed the vitality of *Vulcan Last*:

> [A] corporation acts of necessity through its agents whose acts within the scope of the agent's authority are the acts of the corporation, both for the imposition of civil and criminal liability. *Vulcan Last Co. v. State* (1928), 194 Wis. 636, 217 N.W. 412.

101

*Dried Milk Prods.*, 16 Wis. 2d at 361, 114 N.W.2d at 415.[6]

This legislative inaction, in the face of repeated supreme court pronouncements that corporations can be held liable for criminal acts, convinces us that the legislature concurs in the supreme court's decisions. On two separate occasions the legislature significantly revised the homicide statutes; both times it is presumed that the legislature was aware that court

---

[6] In *State v. Kuhn,* 178 Wis. 2d 428, 432, 504 N.W.2d 405, 407 (Ct. App. 1993), we wrote that individual corporate officers are personally liable for the criminal acts committed in the name of the corporation. *Kuhn* relied upon *State v. Lunz,* 86 Wis. 2d 695, 707, 273 N.W.2d 767, 773 (1979), for the proposition that "[s]ince a corporation is an individual existing only in contemplation of the law, its criminal acts are those of its officers and agents; and thus persons in control of the corporation . . . may be personally prosecuted . . .." *Kuhn,* 178 Wis. 2d at 432, 504 N.W.2d at 407. *Lunz* cites *State v. Laabs,* 40 Wis. 2d 162, 161 N.W.2d 249 (1968), in support of this conclusion. We do not read these cases to support the proposition that corporations cannot be held liable for criminal acts. First, *Kuhn* and *Lunz* addressed corporate criminal liability in the context of refusing to accept the appellants' defense that she or he was acting as a corporate officer and the corporation was the real perpetrator. *See Kuhn,* 178 Wis. 2d at 432-33, 504 N.W.2d at 407-08; *Lunz,* 86 Wis. 2d at 706-07, 273 N.W.2d at 773. Second, *Laabs* involves the prosecution of a corporate officer for filing false financial statements; the appellant did not raise the defense raised in the subsequent cases; and, we are at a loss to find any discussion in the decision even touching upon corporate criminal liability. *See Laabs,* 40 Wis. 2d at 165-66, 161 N.W.2d at 251. We conclude that *Kuhn* and *Lunz* are limited to cases where an officer or agent of a corporation is raising the defense that he or she cannot be criminally liable for acts performed on behalf of the corporation.

decisions have held corporations criminally liable; and on both occasions, the legislature has elected not to undo corporate criminal liability.

Our conclusion conforms to the modern trend of the law. A leading treatise on corporations acknowledges that a corporation may be held to answer for its criminal acts, including homicide. *See* 10 WILLIAM M. FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 4942, at 679, § 4955, at 758 (perm. ed. rev. vol. 1993). In a discussion on enterprise liability, Wayne R. LaFave and Austin W. Scott, Jr. begin with the premise that "it is almost universally conceded that a corporation may be criminally liable for actions or omissions of its agents in its behalf." WAYNE R. LaFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 3.10(a), at 361 (1986). The Model Penal Code also has several provisions holding corporations accountable for criminal behavior.[7]

---

[7] Among those provisions is MODEL PENAL CODE § 2.07, which provides:

**§ 2.07. Liability of Corporations, Unincorporated Associations and Persons Acting, or Under a Duty to Act, in Their Behalf.**

(1)  A corporation may be convicted of the commission of an offense if:

(a)  the offense is a violation or the offense is defined by a statute other than the Code in which a legislative purpose to impose liability on corporations plainly appears and the conduct is performed by an agent of the corporation acting in behalf of the corporation within the scope of his office or employment, except that if the law defining the offense designates the agents for whose conduct the corporation is accountable or the circumstances under which it is accountable, such provisions shall apply; or

(b)  the offense consists of an omission to discharge a specific duty of affirmative performance imposed on corporations by law; or

(c)  the commission of the offense was authorized, requested, commanded, performed or recklessly tolerated by the board of

LaFave and Scott summarize the persuasive policy considerations supporting corporate criminal liability. Among those considerations is the factor that the corporate business entity has become a way of life in this country and the imposition of criminal liability is an essential part of the regulatory process. *Id.* § 3.10(b), at 364. Another consideration centers on the premise that it would be unjust to single out one or more persons for criminal punishment when it is the corporate culture that is the origin of the criminal behavior. *Id.* § 3.10(b), at 365. Also, the size of many corporations makes it impossible to adequately allocate responsibility to individuals. *Id.* § 3.10(b), at 364-65.

An additional consideration is the "indirect economic benefits that may accrue to the corporation through crimes against the person. To get these economic benefits, corporate management may shortcut expensive safety precautions, respond forcibly to strikes, or engage in criminal anticompetitive behavior." *Granite Constr. Co. v. Superior Court,* 197 Cal. Rptr. 3, 5 (Cal. Ct. App. 1983). It has also been suggested that the free market system cannot be depended upon to guide corporate decisions in socially acceptable ways, and the threat of imposition of criminal liability is needed to deter inappropriate (criminal) corporate behavior. *See* John Pray, *State v. Serebin: Causation and the Criminal Liability of Nursing Home Administrators,* 1986 Wis. L. Rev. 339, 358-59.

RKI insists that Wisconsin has disregarded the modern trend of criminal law to hold corporations lia-

---

directors or by a high managerial agent acting in behalf of the corporation within the scope of his office or employment.

    (2)   When absolute liability is imposed for the commission of an offense, a legislative purpose to impose liability on a corporation shall be assumed, unless the contrary plainly appears.

ble for criminal acts. RKI bases its argument on the language of § 940.10, STATS. It argues:

> [T]he only fair reading of [the statute] provides that natural persons alone can be prosecuted for violations of the statute: only "[w]hoever causes the death of another human being" can be found guilty . . . . Because the statute subjects only human beings to criminal liability for negligent vehicular homicide, RKI does not fall within the scope of [the statute].

RKI's argument ignores reality. A corporation acts of necessity through its agents, *see Dried Milk Prods.*, 16 Wis. 2d at 361, 114 N.W.2d at 415; therefore, the only way a corporation can negligently cause the death of a human is by the act of its agent—another human,[8] *see* LAFAVE & SCOTT, *supra,* § 3.10(a), at 363. Reading the statute to limit its coverage to perpetrators who are human, as suggested by RKI, skirts around the concepts of vicarious and enterprise liability. If a human was operating a vehicle within the scope of his or her

---

[8] Wisconsin's criminal jury instructions include a pattern instruction on corporate criminal liability that recognizes that a corporation can only act through its agents.

**CORPORATE LIABILITY: ACTS OF LESSER EMPLOYEES: OTHER THAN STRICT LIABILITY CASES**
(The defendant)(One of the defendants) in this case is a Wisconsin corporation.
Under Wisconsin law, a corporation may be held criminally liable for the acts of an agent or employee when such agent or employee acts within the scope of his employment in behalf of the corporation and the corporate officer or management executive having supervisory responsibility over the subject matter of the offense failed to use due diligence to prevent the commission of the offense.

WIS J I—CRIMINAL 430.

employment when the death occurred, RKI's construction would permit the corporation to escape criminal prosecution simply because it is not a human being.

RKI's attempt to limit the class of perpetrators to natural persons ignores several axioms. First, elementary comparative justice demands that the same criminal liability must be imposed when two relatively similar offenses are committed under similar circumstances. *See* Steven Walt and William S. Laufer, *Why Personhood Doesn't Matter: Corporate Criminal Liability and Sanctions*, 18 AM. J. CRIM. L. 263, 278 (1991).[9] Second, "it is not in virtue of being a person that criminal liability attaches. It is in virtue of possessing the complex relational property of causing harm—voluntarily—with a wrongful state of mind—without excuse." *Id.* at 275. Third, "[f]inding moral responsibility and criminal liability does not depend on first determining whether an entity is a person." *Id.* at 276. We agree with Walt and Laufer that:

> Determining the ontological status of the corporation is unnecessary. For the assignment of corporate criminal liability does not require that determination. Corporations can be held criminally liable without deciding whether they are persons. Indeed, their status as moral persons can be left open. Agnosticism on both counts is justified for the same reason: criminal responsibility, whether of

[9] Steven Walt and William S. Laufer explain MODEL PENAL CODE § 2.07 and the changes the adopting states have made to the suggested language of the statute. *See* Steven Walt and William S. Laufer, *Why Personhood Doesn't Matter: Corporate Criminal Liability and Sanctions*, 18 AM. J. CRIM. L. 263, 267-68 (1991).

individuals or corporations, does not take personhood into account. To be sure, judicial practice requires a finding of personhood . . .. But this is a legislatively imposed requirement. Criminal liability can survive without an inquiry into personhood. Decisional law implicitly recognizes as much by considering personhood a minor barrier to the assignment of liability.

*Id.* at 273-74 (footnote omitted).

Part of RKI's argument is premised upon a narrow definition of "whoever" that excludes corporations. The supreme court's decision in *Kenosha Unified Sch. Dist.,* 70 Wis. 2d at 332, 234 N.W.2d at 314, that when the word "whoever" is used in the statute it refers to both natural and corporate persons, appears to be the universal construction of that term. We agree with both FLETCHER, *supra,* § 4948, at 702-03, and LAFAVE & SCOTT, *supra,* § 3.10(a), at 363-64, that if a penal statute is intended to inhibit an act, a corporation is included within the class of perpetrators if to do so is within the spirit and purpose of the act.[10]

---

[10] The dissent overlooks Wisconsin's historic adherence to "Mr. Justice HOLMES' epigrammatic direction to 'think things rather than words.' " *Peterson v. Sinclair Refining Co.,* 20 Wis. 2d 576, 589, 123 N.W.2d 479, 486 (1963). Although the dissent's use of the rules of grammatical construction to limit the application of § 940.10, STATS., to "persons born alive" is proper application of some of the canons of statutory construction, it does not go far enough. The dissent neglects to consider the prerogative of the courts to disregard grammatical errors or mistakes in statutes in order to give effect to the intent of the legislature. *See State ex rel. Gutbrod v. Wolke,* 49 Wis. 2d 736, 743 n.7, 183 N.W.2d 161, 165 (1971). "In other words, if the legislative intent is clear, it must be given effect regardless of

RKI argues that the evidence adduced at trial was insufficient to support its conviction. RKI asserts that the State failed to prove two elements of the offense: (1) that RKI was criminally negligent, in other words, that RKI should have realized that the conduct created a substantial and unreasonable risk of death or great bodily harm to another; and (2) the causal connection between RKI's alleged criminally negligent conduct and the victim's death.

The test for sufficiency of the evidence is whether an appellate court can conclude that a reasonable trier of fact could be convinced of a defendant's guilt beyond

---

inaccuracies of language . . .." *Id.* at 744 n.7, 183 N.W.2d at 165 (quoted source omitted).

Where there are no other clues to use to discover the legislature's intent, it is appropriate to resort to the rules of grammar. But the employment of the rules of grammar is:

> dependent upon the reasonableness of the interpretation in terms of the subject matter of the statute and whether the interpretation dictated by these ossified rules of construction reaches a workable result. An interpretation reached by relying upon a rule of grammatical construction cannot stand in the face of a conflict revealed in the subject matter under consideration.

*Dittner v. Town of Spencer,* 55 Wis. 2d 707, 711, 201 N.W.2d 45, 47 (1972).

We are satisfied that the history of corporate criminal liability in Wisconsin prescribes the results reached. The construction of § 940.10, STATS., to include corporations is consistent with public policy and practice. In reaching this conclusion, we are cognizant of Justice Holmes' observation that, "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne v. Eisner,* 245 U.S. 418, 425 (1918).

a reasonable doubt by the evidence and reasonable inferences that it had a right to believe and accept as true. *See State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752, 755 (1990). We follow several guidelines during our review of the evidence. First, evidence is to be considered in a light most favorable to the State and the conviction. *Id.* Second, the credibility of the witnesses and the resolution of conflicts in the evidence are functions exclusively reserved for the trier of fact. *See id.* at 503, 451 N.W.2d at 756. Third, the trier of fact, within the bounds of reason, is free to reject inferences that are consistent with the innocence of the defendant. *Id.*

Homicide by negligent use of a vehicle has three elements: "(1) that the defendant cause death (2) by criminal negligence (3) in the operation of a vehicle."[11] Walter Dickey et al., *The Importance of Clarity in the Law of Homicide: The Wisconsin Revision,* 1989 WIS. L. REV. 1323, 1373. The core factor of the three elements is that simple negligence is not enough to hold an individual criminally liable. *Id.* at 1376. In order for a person to face criminal consequences for a negligent act, his or her negligence must rise to the level of criminal negligence.[12]

---

[11] WISCONSIN J I—CRIMINAL 1170 defines the three elements in the following manner: "First, that the defendant operated a vehicle. Second, that the defendant operated a vehicle in a manner constituting criminal negligence. Third, that such criminal negligence on the part of the defendant caused the death of [the victim.]"

[12] Of course, by necessity a corporation can only act through its employees, agents or officers; therefore, it is the negligence of the employee that must rise to the level of criminal negligence. *See State v. Dried Milk Prods. Coop.,* 16 Wis. 2d 357, 361, 114

> Criminal negligence differs from ordinary negligence in two respects. First, the risk is more serious—death or great bodily harm as opposed to simple harm. Second, the risk must be more than an unreasonable risk—it must also be substantial. Criminal negligence involves the same degree of risk as criminal recklessness—an unreasonable and substantial risk of death or great bodily harm. The difference between the two is that recklessness requires that the actor be subjectively aware of the risk, while criminal negligence requires only that the actor should have been aware of the risk—an objective standard.

*Id.* at 1376-77.

We are satisfied that the evidence and reasonable inferences flowing from the evidence support the jury's conclusion that RKI's conduct created a substantial and unreasonable risk of death or great bodily harm to its employees. *See* WIS J I—CRIMINAL 1170. RKI's job performance violated general and specific safety requirements. Although RKI did not violate Occupational Safety and Health Act (OSHA) regulations governing working in the vicinity of electrical power lines, it did violate written safety guidelines applying to this job. In addition, RKI's contract for this specific job required it to comply with certain safety guidelines while on property owned by Wisconsin Electric Power Company.

The evidence permits the reasonable inference that RKI neglected to act with due diligence to insure the safety of its employees as they installed sewer pipes

---

N.W.2d 412, 415 (1962). In this case, the trial court did instruct the jury on the concepts of corporate vicarious liability using WIS J I—CRIMINAL 430, "Corporate Liability: Acts of Lesser Employees: Other than Strict Liability Cases."

in the vicinity of overhead electrical lines. RKI's management took no action to have the power lines de-energized or barriers erected; rather, management elected to merely warn employees about the overhead lines. A finder of fact would be justified in reasonably inferring that RKI had ample notice that the existence of overhead power lines would interfere with the job, and unless there was compliance with safety regulations, working in the vicinity of the overhead lines posed a substantial risk to its employees.

The evidence supports the conclusion that if RKI had enforced the written safety regulations of OSHA, had abided by its own written safety program and had complied with the contract requirements for construction on Wisconsin Electric's property, the electrocution death would likely not have happened. The finder of fact was justified in concluding that RKI operated vehicles in close proximity to the overhead power lines without recognizing the potential hazard to its employees in the vicinity of the vehicles. The jury could reasonably find that RKI's failure to take elementary precautions for the safety of its employees was a substantial cause of the electrocution death.

*By the Court.*—Judgment affirmed.

BROWN, J. (*dissenting*).

I respectfully dissent from the majority decision. I have no quarrel with the general policy considerations favoring corporate criminal liability. And it is indisputable that past Wisconsin cases have made corporations criminally liable for the acts of their agents. But I am convinced that those past cases were based upon statutes with substantially different wording than the statute in this case.

111

For example, the most often cited illustration favoring corporate criminal liability is *Vulcan Last Co. v. State,* 194 Wis. 636, 217 N.W. 412 (1928). The corporation desired to have the City of Crandon install waterworks so that the plant of the company would have fire protection. *Id.* at 637, 217 N.W. at 413. An alderman who was an employee of the company voted against the resolution. *Id.* at 638, 217 N.W. at 413. The plant superintendent held a meeting of employees in which he stated that any person who voted against the company's interest in the upcoming referendum would be discharged; moreover, the alderman was discharged because of his vote at the council meeting. *Id.* Vulcan Last was charged with attempting to influence the vote of employees by threatening discharge and was convicted. *Id.* at 639, 217 N.W. at 413. On appeal, one of Vulcan Last's defenses was that, as a corporation, it could not be convicted of a crime. But the supreme court rejected the claim based upon its reading of the statute. The statute at issue stated in pertinent part: "No person shall, by threatening to discharge a person from his employment . . ., attempt to influence a qualified voter . . . ." *Id.* (quoting § 103.18, STATS., 1925).

The supreme court noted that the statute prohibited any "person" from attempting to influence a voter in the manner prescribed. *Id.* at 643, 217 N.W. at 415. The court then ruled that the word "person" in a penal statute means "person in law." *Id.* at 644, 217 N.W. at 415. The court reasoned that a "person in law" included artificial as well as natural persons. *Id.* The court also cited a federal case for the proposition that "when a statute in general terms prohibits the doing of an act which can be performed by a corporation, and does not expressly exempt corporations from its provisions, there is no reason why the statute should be construed

112

as not applying to them." *Id.* (quoting *United States v. John Kelso Co.*, 86 Fed. 304, 306 (N.D. Cal. 1898)).

*Vulcan Last* therefore stands for the proposition that when a statute refers to a "person" or "persons" as the perpetrator, then artificial persons are subject to criminal liability. *See id.* It also establishes that corporations should be held criminally responsible under a statute employing the words "person" or "persons" unless specifically exempted. *See id.*

Another example, cited by the State, is *Kenosha Unified Sch. Dist. No. 1 v. Kenosha Educ. Ass'n,* 70 Wis. 2d 325, 234 N.W.2d 311 (1975). There, the court was concerned with a statute using the word "whoever." *Id.* at 332, 234 N.W.2d at 314. The court stated:

> It appears to be the rule that when the word "whoever" is employed in a statute, it is considered to refer only to "persons," *whether natural or corporate,* and not to unincorporated associations. [Emphasis added.]

*Id.* Thus, by extension, the *Vulcan Last* rule can be said to mean that where a statute uses *either* the words "person," "persons," *or* "whoever," then artificial persons as well as natural persons are subject to criminal liability. *See id.*; *Vulcan Last,* 194 Wis. at 644, 217 N.W. at 415.

I am satisfied, however, that the instant statute falls outside the *Vulcan Last* rationale. Here, the statute specifically applies to "whoever" causes the death of "another human being" by negligent operation or handling of a vehicle. *See* § 940.10, STATS. Clearly, the phrase "another human being" is a referent to the word "whoever." *See id.* Thus, the pronoun "whoever" is of the same class as its referent—another human being. In my view, the language unambiguously confines the

113

word "whoever" to a natural person, not an artificial person. I am further of the view that this language is an express determination by the legislature that only natural persons, not artificial persons, may be held liable under this statute.

I am influenced by the holding in *People v. Rochester Ry. & Light Co.,* 88 N.E. 22 (N.Y. 1909), cited by Knutson. The court there held that a corporation could not be indicted for homicide where the penal code defined homicide as the "killing of one human being by the act, procurement or omission of another." *Id.* at 24. The court wrote:

> We think that this final word "another" naturally and clearly means a second or additional member of the same kind or class alone referred to by the preceding words, namely, another human being, and that we should not interpret it as appellant asks us to, as meaning another "person," which might then include corporations . . .. It is true that the term "person" used therein may at times include corporations, but that is not the case here.

*Id.* I acknowledge that this New York case is old, but so is the English language. What was basic syntactic analysis in 1909 would be unchanged in 1995.

Other cases and comments cited by Knutson support my acceptance of the New York court's rationale. In *Granite Constr. Co. v. Superior Court,* 197 Cal. Rptr. 3, 4 (Cal. Ct. App. 1983), a corporation appealed a manslaughter conviction based upon a statute explicitly defining "person" to include corporations as well as natural persons. The court stated:

> This statute does not rule out the prosecution of corporations. . . . [I]t does not limit itself to natural

persons by defining the act of manslaughter as the killing "of a human being . . . by another."

*Id.* at 5. Our statute employs the language not found in the California statute. I think this case is instructive because it explains when a statute does or does not include corporations.

An *American Law Reports* annotation also supports the New York court's reasoning. According to the annotation:

> In jurisdictions where homicide is defined as the killing of a human being by another human being, the definition itself seems to preclude corporate liability for the crime. However, the courts have a more difficult job of analyzing the law in jurisdictions where "person" is used in place of "human being" in the definition of homicide since "person" may include or exclude corporations.

Nora A. Uehlein, Annotation, *Corporation's Criminal Liability for Homicide*, 45 A.L.R. 4th, 1021, 1024 (1986) (footnotes omitted). The annotation goes on to cite the reasoning in the New York case as support for commentary. *See id.* at 1029. I find all of these authorities persuasive and would adopt them in ruling for Knutson.

The majority opinion dismisses the grammatical distinctions between the statute involved in this case and the statutes in cases like *Vulcan Last* by concluding that it is "not the description of the perpetrator as a 'person' " which governs corporate liability. Majority op. at 100. Rather, it is the public policy of this state to expose corporations to criminal liability whenever a crime is punishable by fine. *See id.* As I read the majority opinion, what it is saying is that whenever the legislature imposes a fine as one of the alternative

115

methods of punishment, it automatically means to subject corporations to criminal liability no matter what the language of the statute is. The word "fine" is the key to corporate exposure, not any other language of the statute.

The majority gets this idea from its reading of *State ex rel. Kropf v. Gilbert,* 213 Wis. 196, 212, 251 N.W. 478, 484 (1933). The majority cites *Kropf* to say that "it is now well established that a corporation can be held guilty of crime when it is punishable by a fine." *See id.*; majority op. at 100. But that is not what the case said. What the case really said was:

> Although it is now well established that a corporation can be held guilty of crime when it is punishable by a fine [*citing foreign jurisdictions omitted here*], it has been repeatedly held that when the only punishment prescribed for an offense is imprisonment, which cannot in the nature of things be inflicted upon it, no information or indictment will lie against it because the law does not permit or require that which is futile.

*Id.* at 212-13, 251 N.W. at 484 (citations omitted). What the *Kropf* court was saying is that while other jurisdictions have generally held that a corporation *can* be held guilty of a crime when it is punishable by a fine, Wisconsin's courts will not hold a corporation guilty if the punishment is imprisonment. This holding is a far cry from ruling that, in Wisconsin, corporations *will* be held liable if a crime is punishable by a fine. The most that can be said about the *Kropf* holding is that when a fine is a form of punishment, it is not a futile exercise for the legislature to expose corporations to criminal liability. In my view, *Kropf* does not resolve the issue in this case; it only begs the question, which is: Did the

legislature intend to subject corporations to criminal liability under this statute?

Compounding its error, the majority then reasons that since the supreme court has repeatedly held that corporations can be held liable for criminal acts, and since the legislature's criminal code revisions remained silent about corporate criminal liability, therefore the legislature has acquiesced in the supreme court's pronouncements. *See* majority op. at 101–02. But as I have already pointed out, the supreme court has not made the sweeping pronouncement claimed by the majority. The supreme court's judgments regarding corporate liability are no more and no less than what it initially announced in *Vulcan Last*. As I have pointed out, the statute in this case differs substantially from the one in *Vulcan Last* and the reasoning of *Vulcan Last* cannot be applied here.[1]

---

[1] The State argues that the language reflects the legislature's intent to distinguish homicide from suicide. Thus, a person who negligently kills himself or herself cannot be convicted under the statute. The State seemingly posits that this is because the statute should be read to restrict homicide to the killing of "any person except the actor." I acknowledge that in old Europe, a person could be "condemn[ed] . . . to death for the crime of having [committed suicide.]" A. ALVAREZ, THE SAVAGE GOD: A STUDY OF SUICIDE, 46 (1972). In France, for example, the corpse was hanged by the feet, dragged through the streets, burned and thrown on a public garbage heap. *Id.* The French came to their senses in 1791 when the new penal code did not mention suicide. *Id.* at 48. The State's argument appears to be that the legislature thought it necessary to exempt suicides from the criminal statutes. I give the Wisconsin legislature more credit. I think the State's argument is rather remarkable in its attempt to visit this legal idiocy on our legislature. The State cites a draft of the 1950 Legislative Council that spoke to suicide and abortion. But that draft never even got as far as the

117

The majority admits that my use of the canons of statutory construction is "proper," but complains that I have neglected to consider our prerogative to "disregard grammatical errors or mistakes in statutes in order to give effect to the intent of the legislature." Majority op. at 107 n.10. I am unaware, however, of any information which would lead me to believe that the language of the instant statute is a "grammatical error[ ] or mistake[ ]." *See id.* The statutes were substantially modified from the original 1955 laws in 1987 after extended study by the Judicial Council. The Judicial Council is well known for its scholarship and careful attention to detail. I refuse to believe that the language of the present statute is the result of inadvertence or ignorance of the legislative purpose.

What this debate really comes down to is whether it is desirable that a court avoid the literal meaning of this statute. I acknowledge that there exists a tension between the language of the statute and the announced public policy goal by some of our citizenry that corporations be held to criminal liability for negligent deaths. And I reject the notion that we should never search for the "real" rule lying behind the mere words on a printed page. But when the statute's wording is so clear in its contextural rigidity, the statute has therefore generated an answer which excludes otherwise

legislative floor. I reject the State's argument as, apparently, the majority has by its silence on the issue. The State further argues that the wording of the statute was an attempt to address abortions and was designed so that a person who negligently terminated a pregnancy could not be charged under the statute. Other than the draft of the 1950 Legislative Council, there is no evidence that the legislature had this intent, although the plain and unambiguous wording of the statute does effectively exempt such a person from criminal liability.

eligible answers from consideration. Unlike the majority, I take the clear wording of the statute seriously. Since the majority has seen fit to quote Justice Oliver Wendell Holmes, Jr., I too quote from a past justice of the nation's highest court. In *United States v. Public Util. Comm'n*, 345 U.S. 295, 319 (1953) (Jackson, J., concurring), Justice Robert Jackson wrote: "I should concur in this result more readily if the Court could reach it by analysis of the statute instead of by psychoanalysis of Congress." My sentiments exactly.